**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND, | |
| Individually and On Behalf of All Others Similarly Situated, | Case No. 07CV00102 (RBW) |
| Plaintiff, | |
| v. | |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | DEMAND FOR JURY TRIAL |

[Caption continued on following page]

**MOTION OF THE CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST AND THE OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM FOR (1) APPOINTMENT AS LEAD PLAINTIFFS; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS CO-LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

FIRST NEW YORK SECURITIES LLC,

Individually and On Behalf of All Others
Similarly Situated,

              Plaintiff,

           v.

SUNRISE SENIOR LIVING, INC., PAUL J.
KLAASSEN, THOMAS B. NEWELL,
BRADLEY R. RUSH, RONALD V.
APRAHAMIAN, J. DOUGLAS
HOLLADAY, THOMAS J. DONAHUE,
WILLIAM G. LITTLE, TERESA M.
KLAASSEN, CRAIG R. CALLEN, and
J. BARRON ANSCHUTZ,

              Defendants.

Case No. 07CV00294 (RBW)

DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that on a date and time as may be set by the Court, before the Honorable Reggie B. Walton, at the United States District Court for the District of Columbia, located at the E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001, Courtroom 5, the City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust") and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters" and, collectively with the Miami Retirement Trust, the "Public Retirement Systems"), will respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order: (i) appointing the Miami Retirement Trust and the Oklahoma Firefighters as Lead Plaintiffs in the above-captioned action, approving their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio Pease Tabacco Burt & Pucillo as Co-Lead Counsel for the Class and their selection of the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as liaison counsel for the Class, and consolidating all related actions under Federal Rules of Civil Procedure 42(a).

The Public Retirement Systems believe that they have the largest financial interest in the relief sought by the Class and, thus, should be appointed Lead Plaintiffs. Collectively, the Public Retirement Systems purchased 47,731 shares of common stock of Sunrise Senior Living, Inc. ("Sunrise") between August 4, 2005 and June 15, 2006 (the "Relevant Period"), expending a total of $1,565,676 million to purchase those shares. Based upon these transactions, the Public Retirement Systems sustained losses of

1

$171,246 on both a first-in, first-out ("FIFO") and on a last-in, first-out ("LIFO") basis as a result of their investments in Sunrise common stock.

The appointment of the Public Retirement Systems as Lead Plaintiffs would advance the primary goal of the PSLRA lead plaintiff provisions: to encourage institutional investors with large financial stakes in the outcome of the litigation to assume control over securities class actions. In addition, the Public Retirement Systems meet the requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of other Class members' claims and because they will fairly and adequately represent the interests of the Class.

This Motion is based upon: (1) the accompanying Memorandum of Law in support thereof; (2) the Declaration of Gerald H. Silk, filed herewith; and (3) the pleadings, and such other written or oral argument as may be permitted by the Court.

For all the above reasons, the Public Retirement Systems respectfully request that the Court: (i) appoint the Miami Retirement Trust and the Oklahoma Firefighters as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act; (ii) approve the Public Retirement Systems' selection of Bernstein Litowitz and Berman DeValerio as Co-Lead Counsel for the Class and their selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as liaison counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: March 19, 2007                    Respectfully submitted,

                                         /s/ Daniel S. Sommers_____
                                         **COHEN, MILSTEIN, HAUSFELD &**
                                             **TOLL, P.L.L.C.**
                                         Steven J. Toll, D.C. Bar #225623
                                         Daniel S. Sommers, D.C. Bar #416549
                                         Elizabeth S. Finberg, D.C. Bar #468555

1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3964
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699
*Liaison Counsel for the Oklahoma*
*Firefighters Pension and Retirement System*
*and Proposed and the City of Miami*
*General Employees' & Sanitation*
*Employees' Retirement Trust and Proposed*
*Liaison Counsel for the Class*


**BERNSTEIN LITOWITZ BERGER**
    **& GROSSMANN LLP**
Gerald H. Silk
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
*Counsel for the City of Miami General*
*Employees' & Sanitation Employees'*
*Retirement Trust and Proposed Co-Lead*
*Counsel for the Class*


**BERMAN DEVALERIO PEASE**
    **TABACCO BURT & PUCILLO**
Michael J. Pucillo
Jay W. Eng
Esperante Building
222 Lakeview Avenue, Suite 900
West Palm Beach, FL 33401
Telephone: (561) 835-9400
Facsimile: (561) 835-0322
*Counsel for the Oklahoma Firefighters*
*Pension and Retirement System and*
*Proposed Co-Lead Counsel for the Class*

**KLAUSNER & KAUFMAN, PA**
Robert D. Klausner
10059 N.W. 1st Court
Plantation, FL 33324
Telephone: (954) 916-1202
Fax: (954) 916-1232
*Additional Counsel for the City of Miami*
*General Employees' & Sanitation*
*Employees' Retirement Trust*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND, | |
| Individually and On Behalf of All Others Similarly Situated, | Case No. 07CV00102 (RBW) |
| Plaintiff, | |
| v. | |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | DEMAND FOR JURY TRIAL |

[Caption continued on following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST AND THE OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM FOR (1) APPOINTMENT AS LEAD PLAINTIFFS; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS CO-LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

| | |
|---|---|
| FIRST NEW YORK SECURITIES LLC, | |
| Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 07CV00294 (RBW) |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 5

      A.     The Public Retirement Systems Believe That They Have  the Largest Financial Interest in the Relief Sought by the Class ...................... 5

      B.     The Public Retirement Systems Are Sophisticated  Institutional Investors That Satisfy the Requirements of Rule 23 .................................. 8

      C.     The Court Should Approve the Public Retirement  Systems' Choice of Co-Lead Counsel ...................................................................... 9

      D.     The Related Actions Should Be Consolidated ........................................ 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE(s)

*Andrada v. Atherogenics, Inc.*,
    No. 05 Civ 00061(RJH), 2005 WL 912359
    (S.D.N.Y. April 19, 2005) ...........................................7

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) .......................................5

*In re Cable & Wireless, PLC Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ...................................6

*In re Cendant Corp.*,
    264 F.3d 201 (3d Cir. 2001).............................................2, 8, 10

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ..............................2

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    2004 WL 331493 (N.D. Ohio May 12, 2004) ............................6

*In re Fannie Mae Sec. Litig.*,
    355 F.Supp.2d 261 (D.D.C. 2005) ..............................9

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071(HB), 2003 WL 21672085
    (S.D.N.Y. July 16, 2003) ..............................9

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97 F. Supp. 2d 993 (N.D. Cal. 1999) .......................................7

*Montoya v. Mamma.com Inc.*,
    No. 05 Civ 2313(HB), 2005 WL 1278097
    (S.D.N.Y. May 31, 2005).............................................2, 5

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................12

*Sofran v. LaBranche & Co., Inc.*,
    220 F.R.D. 398, 401 (S.D.N.Y. 2004) .......................................12

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................8

*Weltz v. Lee*,
199 F.R.D. 398, 401 (S.D.N.Y. 2001) ...........................................................11

*In re XM Satellite Radio Holdings Sec. Litig.*,
    237 F.R.D. 13, 17 (D.D.C. 2006) ....................................................2, 5, 8, 10

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)...................................................................5

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................1, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)...........................................................8

15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................9

Fed. R. Civ. P. 42(a) ...................................................................................1

The City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust") and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters" and, collectively with the Miami Retirement Trust, the "Public Retirement Systems") respectfully submit this memorandum in support of their motion: (i) to be appointed as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) for approval of its selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Co-Lead Counsel for the Class and Cohen, Milstein, Hausfeld & Toll P.L.L.C. ("Cohen Milstein") as liaison counsel for the Class; and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

This case involves allegations against Sunrise Senior Living, Inc. ("Sunrise" or the "Company") and certain of its officers and directors (collectively, "Defendants") for violations of the federal securities laws.  During the Relevant Period (August 4, 2005 through June 15, 2006), Defendants disseminated to investors materially false and misleading statements regarding the Company's financial condition including significantly overstating earnings.

Pursuant to the PSLRA, this Court should appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the consolidated action.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court should determine, among other things, which movant has the "largest financial interest" in the relief sought by the Class in this litigation and has made a *prima*

*facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define the term "largest financial interest," a broad body of case law establishes the key factors guiding the Court's analysis:  (1) the number of shares of the subject securities purchased; (2) the net funds expended by the movant to acquire those securities; and (3) the approximate losses suffered by the movant.  *See, e.g., In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17 (D.D.C. 2006), citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  In addition to these three factors, many other courts also consider the net number of securities purchased (offsetting the total number purchased by the total number sold).  *See*, *e.g.*, *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004).

Applying these factors, the Public Retirement Systems believe that they will be able to demonstrate that the have the largest financial interest of any movant.

### THE PUBLIC RETIREMENT SYSTEMS' FINANCIAL INTEREST

| | |
|---|---|
| Net Funds Expended: | $1,217,808 |
| Total Funds Expended: | $1,565,676 |
| Total Shares Purchased: | 47,731 |
| Net Shares Purchased: | 38,024 |
| Approximate Loss: | $171,246 |

As demonstrated below, under these factors the Public Retirement Systems are the "most adequate plaintiffs" in this case.

## STATEMENT OF FACTS

This case involves allegations against Sunrise and certain of its officers and directors for violations of the federal securities laws including Sections 10(b), 14(a), 20(a), and 20A of the Exchange Act. The Company provides senior living services in the United States, Canada, the United Kingdom, and Germany. Sunrise also develops senior living communities for itself, for ventures in which it retains an ownership interest, and for third parties.

Plaintiffs allege that during the Relevant Period, Defendants issued materially false and misleading statements regarding the Company's business and its results of operations by improperly accounting for its joint ventures in order to conceal massive losses. As a result of Defendants' misconduct, Sunrise's common stock traded at artificially inflated prices during the Class Period, reaching a high of $39.68 per share on March 29, 2006, as Sunrise reported outstanding financial results. Sunrise officers and directors profited from this scheme through a host of improper practices, including massive insider stock sales, the improper backdating and springloading of stock options, and the payment of bonuses triggered by the inflated financial results the Company reported. The Securities and Exchange Commission has launched an investigation of the Company's practices concerning stock option grants, and Sunrise disclosed the formation of a special committee to conduct an internal investigation.

Specifically, the individual defendants[1] profited from the artificial inflation of Sunrise's stock caused by the Company's fraudulent financial results through illegal insider trading that generated proceeds of over $34 million. In addition, Sunrise's stock

---

[1] The individual defendants are Paul J. Klaassen, Thomas B. Newell, Bradley R. Rush, Ronald V. Aprahamian, J. Douglas Holladay, Thomas J. Donahue, William G. Little, Teresa M. Klaassen, Craig R. Callen and J. Barron Anschutz.

option plans were approved and its directors were elected and reelected by shareholder votes made pursuant to proxy statements rendered false and misleading because the descriptions of the Company's stock option plan contained therein concealed the Company's backdating and springloading of options.

On May 9, 2006, Sunrise issued a press release announcing that it was delaying its first quarter 2006 earning release to allow additional time for further review of the accounting treatment applied to its investments in unconsolidated senior living communities, and to complete the review of its Form 10-Q for the first quarter ended March 31, 2006.  After a series of additional announcements relating to the delayed filing of Sunrise's financials, the Company informed investors on July 31, 2006, that it would be forced to "reduce net income for all periods impacted, including the years 1999 through 2005," to account for the treatment of joint ventures, the timing of sale accounting and recognition of income from prior sales of real estate.  Despite having admitted that its previously issued financial statements overstated the Company's net-income by as much as $110 million, defendants have been unable to provide investors with precise details of the ultimate extent of the contemplated restatement.  Indeed, the Company has yet to provide audited financial statements since December 31, 2005.

The disclosure of the Sunrise's material misstatements, and the Company's repeated delays in filing both audited and unaudited financial statements, caused the price of Sunrise stock to fall.  In response to the May 9, 2006 announcement that Sunrise would delay its first quarter 2006 earnings release "to allow additional time for further review of the accounting treatment applied to its investments in unconsolidated senior living communities," Sunrise shares dropped $6.95 per share, or 18%, from $39.30 per

share to $32.35 per share on significant volume. By the end of the Relevant Period, June 15, 2006, shares of Sunrise were trading down to $28.54, an additional decline of $3.81 or 12%.

The first complaint against Defendants alleging violations of the Exchange Act was filed on January 16, 2007, and the first notice of this action was published on January 16, 2007. The PSLRA permits any member of the purported class to move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Public Retirement Systems have satisfied this deadline by making this motion within 60 days of January 16, 2007.

## ARGUMENT

### A.    The Public Retirement Systems Believe That They Have the Largest Financial Interest in the Relief Sought by the Class

As noted above, the analysis central to appointing Lead Plaintiffs focuses on the consideration of three elements: (1) the number of shares purchased; (2) the total net funds expended by the movant during the relevant period; and (3) the approximate losses suffered by the movant. *See XM Satellite Radio*, 237 F.R.D. at 17. In addition, some courts also consider the number of net shares purchased. *See*, *e.g.*, *Montoya*, 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005). "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999).

Based upon these factors, the Public Retirement Systems intend to demonstrate that they have the largest financial interest in this litigation.

**Net Funds Expended**:  The net funds an investor expended on the subject securities during the relevant period equals the difference between the total funds the investor spent to purchase those securities versus the funds it received from sales of those securities.  Courts have held that the net funds an investor expended during the class period is one of the critical factors in determining the movant with the largest financial interest.  *See*, *e.g.*, *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372 (E.D. Va. 2003); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004).

Collectively, the Public Retirement Systems expended $1,565,676 to purchase Sunrise shares during the Relevant Period, with net expenditures of $1,235,157.  The Miami Retirement Trust expended $347,868 to acquire Sunrise shares during the Relevant Period, and, since it sold nothing during the Relevant Period, its net expenditure is the same as its total expenditure.  *See* Miami Retirement Trust Certification, Silk Decl. at Ex. B.[2]  The Oklahoma Firefighters expended $1,217,808 to acquire Sunrise shares during the Relevant Period, and had net expenditures of $887,289.  *See* Declaration of Robert Jones, Silk Decl. at Ex. C.

**Approximate Losses**:  In determining a movant's approximate loss, courts have employed either the FIFO or LIFO method.  Collectively, the Public Retirement Systems suffered total losses of $171,246 when calculated using either the FIFO or LIFO method. The Oklahoma Firefighters suffered total losses of $91,566 during the Relevant Period under either a FIFO or LIFO analysis.  *See* Declaration of Robert Jones, Silk Decl. at Ex. C; and loss calculations, Silk Decl. at Ex. E.  The Miami Retirement Trust suffered total

---

[2]   References to the "Silk Decl." are to the Declaration of Gerald H. Silk, which is being filed contemporaneously herewith.

losses of $79,680 during the Relevant Period under either a FIFO analysis or LIFO analysis. *See* Miami Retirement Trust Certification, Silk Decl. at Ex. B; and loss calculations, Silk Decl. at Ex. E.

**Net Shares Purchased:** Net shares purchased equals the number of shares purchased less the number of shares sold during the relevant period. The analysis of the number of net shares a movant has purchased serves to distinguish net purchasers (*i.e.*, those who purchased more stock than they sold) from net sellers (*i.e.*, those who sold more stock than they purchased). The distinction is critical because a net seller may be deemed to have benefited from the fraud, and, thus, may not have a financial interest in the relief sought by the Class. *See Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061 (RJH), 2005 WL 912359, *4 (S.D.N.Y. April 19, 2005) (*quoting In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("A net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.").

The Public Retirement Systems are a net purchaser of 38,024 Sunrise shares because they bought a total of 47,731 Sunrise shares, and sold only 9,707 shares, during the Relevant Period. The Oklahoma Firefighters is a net purchaser of 28,439 Sunrise shares, since it bought 38,146 shares and sold 9,707 shares during the Relevant Period. The Miami Retirement Trust is a net purchaser buying 9,585 Sunrise shares and not selling any shares during the Relevant Period.

In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Public Retirement Systems is the presumptive "most adequate plaintiff" and should be appointed as Lead Plaintiffs in

this action.  *See XM Satellite Radio*, 237 F.R.D. at 17; *In re Cendant Corp.*, 264 F.3d 201, 222 (3d Cir. 2001).

> **B.      The Public Retirement Systems Are Sophisticated**
> <u>**Institutional Investors That Satisfy the Requirements of Rule 23**</u>

The PSLRA further provides that the lead plaintiff or plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp.*, 264 F.3d at 222. The Public Retirement Systems have affirmatively demonstrated that they meet the adequacy and typicality requirements of Rule 23, which are the provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA.  *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003).

Representatives from the Miami Retirement Trust and the Oklahoma Firefighters have each affirmed their understanding of the duties owed to the members of the Class and expressed a commitment to oversee the prosecution of the action for the Class.  *See* Declaration of Robert Jones, Silk Decl. Ex. C and Declaration of Sandra Elenberg, Silk Decl. Ex. D.  Through those Declarations, the Public Retirement Systems accept the fiduciary obligations each will undertake if they are appointed lead plaintiff in this action.

Moreover, the Public Retirement Systems are the paradigmatic lead plaintiff envisioned by Congress – sophisticated institutional investors with a real financial interest in the litigation.  The Public Retirement Systems are sophisticated public pension systems that manage, on a collective basis, hundreds of millions of dollars in assets.  The Public Retirement Systems are prepared to work together to maximize the recovery for the entire Class and to supervise counsel to ensure the case is handled efficiently and effectively.  *Id.*  The Public Retirement Systems are "precisely the type of sophisticated

institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation." *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006).

The Public Retirement Systems also satisfy the typicality requirements of Rule 23. "The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071(HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) (internal citation omitted). The Public Retirement Systems' interests are the same as those of other Class members. Like other Class members, the Public Retirement Systems seek to hold Defendants liable for the consequences of their violations of the federal securities laws. Indeed, the events and course of conduct that give rise to the Public Retirement Systems' claims are the same events and course of conduct that give rise to the claims of the Class. There are no facts which indicate any conflicts of interest between the Public Retirement Systems and the other Class members. Because the Public Retirement Systems' claims are based on the same legal theories and arise from the same events giving rise to the claims of other Class members, the typicality requirement of Rule 23 is satisfied.

    **C.**    **The Court Should Approve the Public Retirement Systems' Choice of Co-Lead Counsel**

Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, codified at 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain lead counsel to represent the Class, subject to Court approval. *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264-65 (D.D.C. 2005). "The PSLRA 'evidences a strong presumption in favor of approving a

properly-appointed lead plaintiff's decisions as to counsel selection and counsel retention.'" *XM Satellite Radio*, 237 F.R.D. at 21, quoting *Cendant*, 264 F.3d at 276.

The Miami Retirement Trust has selected and retained the law firm of Bernstein Litowitz and the Oklahoma Firefighters has selected and retained Berman DeValerio. Bernstein Litowitz and Berman DeValerio have worked together in other securities class actions and are prepared to work together here on behalf of the Class.

Bernstein Litowitz is among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country. *See, e.g.*, Bernstein Litowitz's Firm Biography attached as Exhibit F to the Silk Decl. Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were recently obtained for the class. Other cases in which Bernstein Litowitz has been recognized as an appropriate lead or co-lead counsel since the passage of the PSLRA, include, for example, *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) and *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.) (which recently settled for $2.4 billion). Accordingly, the Court should approve the Miami Retirement Trust's selection of Bernstein Litowitz as Co-Lead Counsel for the Class.

Berman DeValerio is a 36-lawyer firm with offices in San Francisco, Boston and West Palm Beach with extensive experience representing plaintiffs in securities class action litigation. *See, e.g.*, Berman DeValerio's Firm Biography attached as Exhibit G to the Silk Decl. The firm acts as monitoring, evaluation, and/or litigation counsel for some

60 public and Taft-Hartley pension funds, including three of the five largest pension funds in the nation. Berman DeValerio served as counsel to the court-appointed bondholder representatives in the *WorldCom, Inc. Securities Litigation*. More recently, Berman DeValerio served as one of three Co-Lead Counsel with Bernstein Litowitz in the *El Paso Securities Litigation* which resulted in a settlement for the class of $285 million. Accordingly, the Court should approve the Oklahoma Firefighters' selection of Berman DeValerio as Co-Lead Counsel for the Class.

In addition, the Public Retirement Systems have selected the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") as liaison counsel for the Class. Cohen Milstein is a firm of more than 50 attorneys with offices in Washington, D.C., New York, Philadelphia and Chicago with more than 30 years of experience representing plaintiffs in securities class action litigation.

### D.    The Related Actions Should Be Consolidated

The Public Retirement Systems believe the only two securities class actions filed to date relating to the same or similar factual and legal issues are:

| Case Name | Case No. |
|---|---|
| United Food and Commercial Workers Union Local 880—Retail Food Employers Joint Pension Fund, et al. v. Sunrise Senior Living, Inc., et al. | 07-cv-00102 |
| First New York Securities LLC v. Sunrise Senior Living, Inc., et al. | 07-cv-00294 |

These actions present virtually identical factual and legal issues, as they arise out of the same alleged misstatements regarding the Company's violations of the federal securities laws. Accordingly, consolidation is appropriate here. *See Weltz v. Lee*, 199

F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (citation omitted); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292.

The complaints in these actions allege the same class period and "rely upon the same series of allegedly false and misleading public statements and omissions." *Olsten*, 3 F. Supp. 2d at 293; *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (consolidation proper where two complaints assert "essentially similar and overlapping claims").

<u>**CONCLUSION**</u>

For all the above reasons, the Public Retirement Systems respectfully request that the Court: (i) appoint the Miami Retirement Trust and the Oklahoma Firefighters as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act; (ii) approve the Public Retirement Systems' selection of Bernstein Litowitz and Berman DeValerio as Co-Lead Counsel for the Class and their selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as liaison counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: March 19, 2007                    Respectfully submitted,

<u>/s/ Daniel S. Sommers</u>
**COHEN, MILSTEIN, HAUSFELD &**
**TOLL, P.L.L.C.**
Steven J. Toll, D.C. Bar #225623
Daniel S. Sommers, D.C. Bar #416549
Elizabeth S. Finberg, D.C. Bar #468555
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3964

Telephone:  (202) 408-4600
Facsimile: (202) 408-4699
*Liaison Counsel for the Oklahoma*
*Firefighters Pension and Retirement System*
*and Proposed and the City of Miami*
*General Employees' & Sanitation*
*Employees' Retirement Trust and Proposed*
*Liaison Counsel for the Class*


**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Gerald H. Silk
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
*Counsel for the City of Miami General*
*Employees' & Sanitation Employees'*
*Retirement Trust and Proposed Co-Lead*
*Counsel for the Class*

**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**
Michael J. Pucillo
Jay W. Eng
Esperante Building
222 Lakeview Avenue, Suite 900
West Palm Beach, FL 33401
Telephone: (561) 835-9400
Facsimile: (561) 835-0322
*Counsel for the Oklahoma Firefighters
Pension and Retirement System and
Proposed Co-Lead Counsel for the Class*

**KLAUSNER & KAUFMAN, PA**
Robert D. Klausner
10059 N.W. 1st Court
Plantation, FL 33324
Telephone: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel for the City of Miami
General Employees' & Sanitation
Employees' Retirement Trust*

14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND,<br><br>Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M.. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ,<br><br><br>        Defendants. | Case No. 07CV00102 (RBW)<br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

[Caption continued on following page]

**CERTIFICATE OF SERVICE**

| | |
|---|---|
| FIRST NEW YORK SECURITIES LLC, | |
| Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 07CV00294 (RBW) |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M.. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

I hereby certify that March 19, 2007, true and correct copies of the following documents were served on the parties below via UPS overnight delivery:

1. Notice of Appearance

2. Motion of the City of Miami General Employees' & Sanitation Employees' Retirement Trust and the Oklahoma Firefighters Pension and Retirement System for (1) Appointment as Lead Plaintiffs; (2) Approval of Their Selection of Counsel as Co-Lead Counsel for the Class; and (3) Consolidation of All Related Actions;

3. Memorandum of Law in Support of the Motion of the City of Miami General Employees' & Sanitation Employees' Retirement Trust and the Oklahoma Firefighters Pension and Retirement System for (1) Appointment as Lead Plaintiffs; (2) Approval of Their Selection of Counsel as Co-Lead Counsel for the Class; and (3) Consolidation of All Related Actions;

4. Declaration of Gerald H. Silk in Support of the Motion of the City of Miami General Employees' & Sanitation Employees' Retirement Trust and the Oklahoma Firefighters Pension and Retirement System for (1) Appointment as Lead Plaintiffs; (2) Approval of Their Selection of Counsel as Co-Lead Counsel for the Class; and (3) Consolidation of All Related Actions; and

5. [Proposed] Order.

Jonathan W. Cuneo, Esq.
CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.E.
Washington, DC 20002
202-789-3960

William S. Lerach, Esq.
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS, LLP
655 West Broadway, Suite 1900
Sand Diego, CA, 92101
619-231-1058

Nancy M. Juda, Esq.
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS, LLP
1100 Connecticut Avenue, NW, Suite 730
Washington, DC 20036
202-822-0600

Eben O. McNair IV, Esq.
SCHWARZWALD & McNAIR LLP
616 Penton Media Building
1300 East Ninth Street
Cleveland, OH 44114
216-566-1600

Donald J. Enright, Esq.
FINKELSTEIN THOMPSON LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 2007
202-337-8000

Vincent J. Cappucci, Esq.
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue, 26th Floor West
New York, NY 10017
212-894-7200

Roger M. Adelman, Esq.
LAW OFFICES OF ROGER M. ADELMAN
1100 Connecticut Avenue, NW, Suite 730
Washington, DC 20036
202-822-0600

George Henry Mernick, III
HOGAN & HARTSON, L.L.P.
555 13th Street, NW
Washington, DC 20004-1109
(202) 637-5726
Fax: 202-637-5910


/s/ Elizabeth S. Finberg

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND, | |
| Individually and On Behalf of All Others Similarly Situated, | Case No. 07CV00102 (RBW) |
| Plaintiff, | |
| v. | |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | DEMAND FOR JURY TRIAL |

[Caption continued on following page]

**[PROPOSED] ORDER**

FIRST NEW YORK SECURITIES LLC,

Individually and On Behalf of All Others
Similarly Situated,

        Plaintiff,

      v.

SUNRISE SENIOR LIVING, INC., PAUL J.
KLAASSEN, THOMAS B. NEWELL,
BRADLEY R. RUSH, RONALD V.
APRAHAMIAN, J. DOUGLAS
HOLLADAY, THOMAS J. DONAHUE,
WILLIAM G. LITTLE, TERESA M.
KLAASSEN, CRAIG R. CALLEN, and
J. BARRON ANSCHUTZ,

        Defendants.

Case No. 07CV00294 (RBW)

DEMAND FOR JURY TRIAL

Upon consideration of (1) the motion of the City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust") and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters" and, collectively with the Miami Retirement Trust, the "Public Retirement Systems") for: (i) appointment as Lead Plaintiffs; (ii) approval of their selection of counsel Co-Lead Counsel and liaison counsel for the Class; and (iii) consolidation of all related actions, (2) the Memorandum of Law in support thereof; (3) the Declaration of Gerald H. Silk in support thereof and the exhibits thereto; and (4) all other pleadings and argument submitted to this Court; and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Public Retirement Systems' motion is **GRANTED**;

2.      Miami Retirement Trust and the Oklahoma Firefighters are **APPOINTED** to serve as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the above-captioned actions and all related actions consolidated pursuant to paragraph 4 of this Order.

3.      The Public Retirement Systems' selection of counsel is **APPROVED**, and Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio Pease Tabacco Burt & Pucillo are **APPOINTED** as Co-Lead Counsel for the Class and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. is **APPOINTED** as liaison counsel for the Class.

4.      Pursuant to Fed. R. Civ. P. 42(a), the above-captioned actions, and any subsequently filed or transferred actions on behalf of purchasers of securities of Sunrise

Senior Living, Inc., related to the claims asserted in these actions, are hereby **CONSOLIDATED** for all purposes.

     5.    This action shall be captioned "In re Sunrise Senior Living, Inc. Securities Litigation," and the file shall be maintained under Master File No. 07CV00102 (RBW).

     **IT IS SO ORDERED.**

Dated: _____, 2007

_____
Honorable Reggie B. Walton
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND, <br><br> Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M.. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, <br><br> Defendants. | Case No. 07CV00102 (RBW) <br><br><br><br><br><br><br><br><br><br><br><br><br> <u>DEMAND FOR JURY TRIAL</u> |

[Caption continued on following page]

**DECLARATION OF GERALD H. SILK IN SUPPORT OF THE MOTION OF THE CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST AND THE OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM FOR (1) APPOINTMENT AS LEAD PLAINTIFFS; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS CO-LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

FIRST NEW YORK SECURITIES LLC,

Individually and On Behalf of All Others
Similarly Situated,

              Plaintiff,

           v.

SUNRISE SENIOR LIVING, INC., PAUL J.
KLAASSEN, THOMAS B. NEWELL,
BRADLEY R. RUSH, RONALD V.
APRAHAMIAN, J. DOUGLAS
HOLLADAY, THOMAS J. DONAHUE,
WILLIAM G. LITTLE, TERESA M..
KLAASSEN, CRAIG R. CALLEN, and
J. BARRON ANSCHUTZ,

             Defendants.

Case No. 07CV00294 (RBW)

DEMAND FOR JURY TRIAL

I, Gerald H. Silk, hereby declare as follows:

1.     I am a member in good standing of the bars of the State of New York and of this Court.  I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz").  I submit this declaration in support of the motion filed by the City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust") and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters" and, collectively with the Miami Retirement Trust, the "Public Retirement Systems") for appointment as Lead Plaintiffs and approval of their selection of Bernstein Litowitz and Berman DeValerio Pease Tabacco Burt & Pucillo as Co-Lead Counsel for the Class and their selection of the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as liaison counsel for the Class.

2.     Attached as Exhibits A through G are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit A: | First issued notice of the Sunrise securities class action, dated January 16, 2007; |
| Exhibit B: | Certification of Miami Retirement Trust, with attached trading chart; |
| Exhibit C: | Declaration of Robert Jones, with attached trading chart; |
| Exhibit D: | Declaration of Sandra Elenberg; |
| Exhibit E: | Loss calculations for the Miami Retirement Trust and the Oklahoma Firefighters; |
| Exhibit F: | Firm Biography of Bernstein Litowitz Berger & Grossmann LLP; and |
| Exhibit G: | Firm Biography of Berman DeValerio Pease Tabacco Burt & Pucillo. |

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 19th day of March, 2007.

_____
Gerald H. Silk (GS-4565)

# EXHIBIT A

download

BUS 01/16 Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class

Action Suit Against Sunrise Senior Living, Inc.


SAN DIEGO--(BUSINESS WIRE)--January 16, 2007
Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach
Coughlin") (http://www.lerachlaw.com/cases/sunrisesenior/) today
announced that a class action has been commenced on behalf of two
institutional investors in the United States District Court for the
District of Columbia on behalf of purchasers of Sunrise Senior Living,
Inc. ("Sunrise") (NYSE:SRZ) publicly traded securities during the
period between August 4, 2005 and June 15, 2006 (the "Class Period"),
including those who owned Sunrise common stock from 2000 through 2006
at the time Sunrise's 2000-2006 Proxy Statements were circulated to
shareholders to solicit their votes on various matters.

    If you wish to serve as lead plaintiff, you must move the Court no
later than 60 days from today. If you wish to discuss this action or
have any questions concerning this notice or your rights or interests,
please contact plaintiffs' counsel, William Lerach or Darren Robbins
of Lerach Coughlin at 800/449-4900 or 619/231-1058, or via e-mail at
wsl@lerachlaw.com. If you are a member of this class, you can view a
copy of the complaint as filed or join this class action online at
http://www.lerachlaw.com/cases/sunrisesenior/. Any member of the
purported class may move the Court to serve as lead plaintiff through
counsel of their choice, or may choose to do nothing and remain an
absent class member.

    The complaint charges Sunrise and certain of its officers and
directors with violations of the Securities Exchange Act of 1934.
Sunrise provides residential and other services to retirees and
elderly persons through facilities it develops and constructs and then
manages, often through joint ventures.

    The complaint alleges that during the Class Period, defendants
issued materially false and misleading statements regarding the
Company's business, its stock option plans, its compensation practices
and its financial results. As a result of these false statements,
Sunrise's common stock traded at artificially inflated prices during
the Class Period, reaching a high of $39.68 per share on March 29,
2006. The individual defendants took advantage of Sunrise's falsified
financial results, the artificial inflation of Sunrise's stock and the
manipulation of its stock option plans by selling shares of their
Sunrise stock for illegal insider trading proceeds of over $34
million, while Sunrise's top officers pocketed millions more in
unjustified bonus payments enhanced in part by Sunrise's falsified
profits. The complaint alleges that defendants had previously
manipulated the Company's stock option plans so as to enrich

-----------------------------============------------------------------
Copyright (c) 2007

themselves by "backdating" or "spring-loading" the stock options they
were granted.

    Then on May 9, 2006, Sunrise disclosed a delay in reporting its
first quarter 2006 results to allow a review of its financial

download

statements, and on July 31, 2006, Sunrise revealed it would be forced to restate its financial statements going back several years - at least to 1999 - and that its prior financial statements could no longer be relied upon. Sunrise also admitted it could not file current period financial statements for the first, second and third quarters of 2006 and that when it restated its financial results, at least $100 million of previously reported profits from its joint ventures and real estate sales would be eliminated. As these revelations unfolded, Sunrise's stock fell from $39.62 on May 8, 2006 to as low as $24.40 on July 31, 2006.

Plaintiffs seek to recover damages on behalf of all purchasers of Sunrise publicly traded securities during the Class Period (the "Class"). The plaintiffs are represented by Lerach Coughlin, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Lerach Coughlin, a 180-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. Lerach Coughlin lawyers have been responsible for more than $20 billion in aggregate recoveries. The Lerach Coughlin Web site (http://www.lerachlaw.com) has more information about the firm.

CONTACT:
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
William Lerach, 800-449-4900
wsl@lerachlaw.com

-O- (BUS) Jan/16/2007 21:39 GMT

-----------------------------=============================----------------------------------
Copyright (c) 2007

########################### END OF STORY 1  ###########################

# EXHIBIT B

## CERTIFICATION

Sandra Elenberg, Pension Administrator of the City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust"), declares, as to the claims asserted under the federal securities laws, that:

1.      She has reviewed the complaint in *United Food and Commercial Workers Union Local 880- Retail Food Employers Joint Pension Fund et al v. Sunrise Senior Living* (District of Columbia Jan. 16, 2007), the first filed in this matter in this District.

2.      The Miami Retirement Trust did not purchase the securities that are the subject of this action at the direction of its counsel or to participate in this private action.

3.      The Miami Retirement Trust is willing to serve as a Lead Plaintiff and class representative on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.      The Miami Retirement Trust's transactions in Sunrise Senior Living securities that are the subject of this action are set forth below:

**Transactions in Sunrise Senior Living**
**Class Period: 8/4/05-6/15/06**

| Transactions | Trade Date | Shares | Price |
|---|---|---|---|
| | opening balance: | 0 | |
| Buy | 12/12/2005 | 9585 | $36.293 |

5.      During the three years prior to the date of this Certification, the Miami Retirement Trust has served or sought to serve as a representative party on behalf of a class in the following actions filed under the federal securities laws:

*In re Williams Securities Litigation*
*In re Cigna Corp. Securities*

6.      The Miami Retirement Trust will not accept any payment for serving as a representative party on behalf of the Class beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this *18* day of March 2007.

Sandra Elenberg
Pension Administrator
*City of Miami General Employees' & Sanitation*
*Employees' Retirement Trust*

# EXHIBIT C

## DECLARATION OF ROBERT JONES

I, Robert Jones, under the penalty of perjury, declare as follows:

1.      I am Executive Director of Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Fund"), and respectfully submit this Declaration in support of the Oklahoma Fund's application to be appointed Co-Lead Plaintiff in this securities class action filed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  I am a member of the Oklahoma Bar Association and a Certified Public Accountant.  I have personal knowledge about the information in this Declaration relating to the Oklahoma Fund.  I am competent to testify to the matters set forth herein.

2.      The Oklahoma State Legislature created the Okalahoma Firefighters Pension and Retirement System in 1981.  The Oklahoma Fund provides pension benefits to all participating firefighters.  The Oklahoma Fund's assets are invested in a diversified portfolio consisting of domestic and international stocks, bonds, and other investments, managed by outside investment managers.  A thirteen-member Board of Trustees governs the Oklahoma Firefighters Pension and Retirement System.  The Board of Trustees (i) is responsible for the policies and rules for the general administration of the system, subject to the provisions of state law and properly promulgated rules; (ii) establishes rules for the administration of the system and for the transaction of its business consistent with the law; and (iii) takes all necessary action upon applications for pension benefits, disability benefits, survivor benefits, death benefits, entrance into the system, and refunds of contributions.

3.      I have been advised of the allegations made against Sunrise Senior Living, Inc. ("Sunrise") that give rise to the claimed violations of the federal securities laws.  As reflected in the accompanying chart, the Oklahoma Fund purchased 38,146 shares of Sunrise common stock

during the Class Period and suffered losses of approximately $91,566 on a Net, FIFO and LIFO basis. The Oklahoma Fund did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any private action arising under the Securities Exchange Act of 1934.

4.    The Oklahoma Fund is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. The Oklahoma Fund seeks appointment as Co-Lead Plaintiff with the Miami General Relief Retirement System ("Miami Retirement System"). The Oklahoma Fund has agreed to work together with the Miami Retirement System to ensure the maximum recovery possible, to monitor counsel, and to ensure that attorney's fees are reasonable and below customary fees.

5.    During the three years prior to the date of this Declaration, the Oklahoma Fund has served as a representative party on behalf of a class filed under the federal securities laws in the following cases: *In re JDS Uniphase Corp. Sec. Litig.*, Case No. 02-1486 (N.D. Cal.) (appointed class representative); *In re Central Freight Lines Sec. Litig.*, Case No. 04-CV-177 (W.D. Tex.) (appointed lead plaintiff, case settled and final judgment was entered on February 23, 2007); and *Wyatt v. El Paso Corp., et al.*, Case Nos. H-02-2717 (S.D. Tex.) (appointed co-lead plaintiff, case settled and final judgment was entered on March 9, 2007). In addition, the Oklahoma Fund also sought to serve as a lead plaintiff in the following cases but was not appointed to such role: *In re Impath Inc. Sec. Litig.*, Case No. 03-CV-05667 (S.D.N.Y.); *Smajlaj v. Brocade Comms. Systems, Inc.*, Case No. 05-CV-02042 (N.D. Cal.); *Yorston v. Epix Pharmaceuticals, Inc.*, Case No. 05-CV-10166 (D. Mass.); *Mizzaro v. Home Depot*, Case No. 06-CV-1151 (N.D. Ga.); and *In re Vitesse Semiconductor Corp. Sec. Litig.*, Case No. 06-CV-02639 (C.D. Cal.).

6.      The Oklahoma Fund will keep fully informed at all times concerning the status and progress of this case, including any motion practice, class certification, discovery and the prospects for settlement.  As Co-Lead Plaintiff, the Oklahoma Fund will consult with counsel in advance with respect to each major litigation event, such as important motions, settlement discussions, trial preparation and trial, and shall have the authority and responsibility to direct counsel with respect to each of these events after receiving the benefit of counsel's advice. Further, the Oklahoma Fund understands that it owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and to work actively with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy.

7.      I am familiar with the PSLRA and the circumstances that led to its enactment.  I know that one of primary goals behind the enactment of the PSLRA was to encourage institutional investors, like the Oklahoma Fund, to become lead plaintiffs in securities class actions in order to assure the class of the best possible representation and recovery at a fair and reasonable cost.  I will personally ensure that if the Oklahoma Fund is appointed as Co-Lead Plaintiff in this case, it will actively represent the Class.  The Oklahoma Fund will stay informed of the status and progress of the litigation and will directly participate in settlement and other strategy discussions should that be advisable.  To the extent necessary, representatives of the Oklahoma Fund will also attend major hearings and trial.

8.      The Oklahoma Fund will neither seek nor accept any payment for serving as a lead plaintiff in this action beyond its *pro rata* share of the recovery, except reimbursement of reasonable out of pocket costs and expenses incurred in the prosecution of this case.

9.    The Oklahoma Fund engaged in a Request for Proposal process from numerous securities class action law firms, and interviewed various firms with experience in this type of case.  As a result of this process, the Oklahoma Fund selected Berman DeValerio Pease Tabacco Burt & Pucillo as an approved law firm to represent the Oklahoma Fund in securities litigation matters.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of March, 2007.

_____

Robert Jones, Esq.
Executive Director for Oklahoma Firefighters
Pension and Retirement System

### Sunrise Senior Living, Inc. Shareholder Losses (Net,FIFO,LIFO)

**Class Period:** 8/4/05-6/15/06
**$27.98 = 90 Avg. Price 6/16/06-9/14/06**
**Shareholder:** Oklahoma Firefighters Pension & Retirement System

| Trade Date | Adj. Shares Bought | Adj. Shares Sold | Adj. Shares Remaining | Adj. Price/Share | (Costs)/Proceeds |
|---|---|---|---|---|---|
| | | | | | |
| 8/24/2005 | 6,200 | | 6,200 | $30.3197 | ($187,982.14) |
| 8/24/2005 | 17,400 | | 23,600 | $30.2943 | ($527,119.95) |
| 9/1/2005 | 400 | | 24,000 | $29.7100 | ($11,884.00) |
| 10/5/2005 | | (2,153) | 21,847 | $32.2920 | $69,524.68 |
| 11/8/2005 | | (1,107) | 20,740 | $32.5900 | $36,077.13 |
| 12/6/2005 | | (970) | 19,770 | $34.9689 | $33,919.83 |
| 12/7/2005 | | (1,714) | 18,056 | $34.6766 | $59,435.69 |
| 12/8/2005 | | (2,674) | 15,382 | $34.7685 | $92,970.97 |
| 1/6/2006 | 1,258 | | 16,640 | $35.1166 | ($44,176.68) |
| 1/9/2006 | 704 | | 17,344 | $35.1669 | ($24,757.50) |
| 1/10/2006 | 495 | | 17,839 | $34.9056 | ($17,278.27) |
| 2/8/2006 | 93 | | 17,932 | $34.8322 | ($3,239.39) |
| 2/9/2006 | 496 | | 18,428 | $34.1728 | ($16,949.71) |
| 3/8/2006 | 291 | | 18,719 | $36.5833 | ($10,645.74) |
| 3/10/2006 | 1,112 | | 19,831 | $36.0031 | ($40,035.45) |
| 3/14/2006 | 458 | | 20,289 | $37.3982 | ($17,128.38) |
| 4/6/2006 | 765 | | 21,054 | $38.8200 | ($29,697.30) |
| 4/7/2006 | 1,634 | | 22,688 | $37.4419 | ($61,180.06) |
| 5/9/2006 | 1,215 | | 23,903 | $32.2912 | ($39,233.81) |
| 5/12/2006 | 2,672 | | 26,575 | $35.3594 | ($94,480.32) |
| 5/16/2006 | | (1,089) | 25,486 | $35.4360 | $38,589.80 |
| 5/19/2006 | 848 | | 26,334 | $33.0800 | ($28,051.84) |
| 6/12/2006 | 526 | | 26,860 | $31.1930 | ($16,407.52) |
| 6/13/2006 | 1,579 | | 28,439 | $30.1200 | ($47,559.48) |
| | | | | | |
| Subtotal: | 38,146 | (9,707) | | | ($887,289.43) |
| Shares Remaining: | 28,439 | | | | |
| Shares Remaining x $27.98: | $795,723 | | | | |
| Total (Losses)/Profit: | ($91,566) | | | | |

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880—RETAIL FOOD EMPLOYERS JOINT PENSION FUND, and UNITED FOOD AND COMMERCIAL WORKERS UNION – EMPLOYER PENSION FUND, | |
| Individually and On Behalf of All Others Similarly Situated, | Case No. 07CV00102 (RBW) |
| Plaintiff, | |
| v. | |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M.. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | DEMAND FOR JURY TRIAL |

[Caption continued on following page]

**DECLARATION OF SANDRA ELENBERG IN SUPPORT OF THE**
**MOTION OF THE CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION**
**EMPLOYEES' RETIREMENT TRUST AND THE OKLAHOMA FIREFIGHTERS**
**PENSION AND RETIREMENT SYSTEM FOR (1) APPOINTMENT AS LEAD**
**PLAINTIFFS; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS CO-LEAD**
**COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED**
**ACTIONS**

| | |
|---|---|
| FIRST NEW YORK SECURITIES LLC, | |
| Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 07CV00294 (RBW) |
| SUNRISE SENIOR LIVING, INC., PAUL J. KLAASSEN, THOMAS B. NEWELL, BRADLEY R. RUSH, RONALD V. APRAHAMIAN, J. DOUGLAS HOLLADAY, THOMAS J. DONAHUE, WILLIAM G. LITTLE, TERESA M.. KLAASSEN, CRAIG R. CALLEN, and J. BARRON ANSCHUTZ, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

SANDRA ELENBERG, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I respectfully submit this Declaration on behalf of the City of Miami General Employees' & Sanitation Employees' Retirement Trust (the "Miami Retirement Trust"), in support of the motion of the Miami Retirement Trust and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters") to be appointed Lead Plaintiffs in the above-captioned cases pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). To the best of my knowledge, the information in this Declaration is true and correct.

2.      I am the Pension Administrator of the Miami Retirement Trust, a public pension system organized for the benefit of current and retired employees of the City of Miami, Florida. The Miami Retirement Trust is a public pension fund established for the benefit of current and retired public employees in Miami, Florida.  The Miami Retirement Trust provides retirement benefits to thousands of members and their beneficiaries and has approximately $680 million in assets under management. As reflected in its Certification, the System purchased a significant amount of shares of Sunrise Senior Living, Inc. ("Sunrise" or the "Company") during the period from August 4, 2005 and June 15, 2006 (the "Relevant Period") and suffered a loss as a result of the violations of the federal securities laws as alleged in this Action.

3.      The Miami Retirement Trust has agreed to work together with the Oklahoma Firefighters and the two funds have agreed to serve as Co-Lead Plaintiffs in this Action. It is my understanding that the Miami Retirement Trust and the Oklahoma Firefighters share the mutual goal of directing the prosecution of this Action, and supervising class counsel. Further, it is my understanding that the funds are dedicated to maximizing the recovery to the Class

1

Members in this Action and ensuring that any fees paid to class counsel are reasonable and below that which is ordinarily awarded in litigation of this type. Based on these mutual objectives, I believe that it is appropriate for large public pension systems such as the Miami Retirement Trust and Oklahoma Firefighters to work together to supervise the prosecution of this Action as Lead Plaintiffs to protect the rights of Class members.

4.      I understand that the Lead Plaintiffs' job under the PSLRA is to select and retain Lead Counsel and to supervise the prosecution of the case. I believe that it is essential to the satisfaction of the System's fiduciary responsibility to the Class to select and retain Lead Counsel that have a proven track record handling these types of cases and that will operate pursuant to the Lead Plaintiffs' direction and authority. One of the factors motivating the Miami Retirement Trust to seek appointment as Lead Plaintiff is this belief, and the System's desire to ensure that its choice of counsel, together with the counsel selected by the Oklahoma Firefighters, are appointed Co-Lead Counsel and empowered to prosecute this Action for the benefit of the Class.

5.      The Miami Retirement Trust has retained the law firm of Bernstein Litowitz Berger & Grossmann LLP, and the Oklahoma Firefighters has retained the law firm of Berman DeValerio Pease Tabacco Burt & Pucillo. I understand that Bernstein Litowitz and Berman DeValerio Pease Tabacco Burt & Pucillo have worked together in the past and are prepared to work efficiently together here under the direction of the Miami Retirement Trust and Oklahoma Firefighters.

2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 19 day of March, 2007.

Sandra Elenberg
Pension Administrator
City of Miami General Employees' & Sanitation
 Employees' Retirement Trust

3

# EXHIBIT E

**Oklahoma Firefighters Pension & Retirement System**
**Loss Calculations in Sunrise Senior Living**
**Class Period: 8/4/05-6/15/06**
**90 day average: 6/16/06-9/14/06 = $27.98**

| Trans | Date | Shares | Price | Cost | 90 day avg | Trans | Date | Shares | Price | Proceeds |
|-------|------|--------|-------|------|-----------|-------|------|--------|-------|----------|
| | *opening balance:* | 0 | | | | | | | | |
| Buy | 8/24/2005 | 6,200 | $30.3197 | $187,982.14 | | Sell | 10/5/2005 | -2,153 | $32.2920 | $ (69,524.68) |
| Buy | 8/24/2005 | 3,507 | $30.2943 | $106,241.93 | | Sell | 11/8/2005 | -1,107 | $32.5900 | $ (36,077.13) |
| | | 9,707 | | $294,224.07 | | Sell | 12/6/2005 | -970 | $34.9689 | $ (33,919.83) |
| | | | | | | Sell | 12/7/2005 | -1,714 | $34.6766 | $ (59,435.69) |
| | | | | | | Sell | 12/8/2005 | -2,674 | $34.7685 | $ (92,970.97) |
| | | | | | | Sell | 5/16/2006 | -1,089 | $35.4360 | $ (38,589.80) |
| | | | | | | | | -9,707 | | $ (330,518.10) |
| | | | | | | | | *Gain on class period sales:* | | $36,294.03 |
| Buy | 8/24/2005 | 13,893 | $30.2943 | $420,878.02 | 27.98 | | | | | $ (32,151.88) |
| Buy | 9/1/2005 | 400 | $29.7100 | $11,884.00 | 27.98 | | | | | $ (692.00) |
| Buy | 1/6/2006 | 1,258 | $35.1166 | $44,176.68 | 27.98 | | | | | $ (8,977.84) |
| Buy | 1/9/2006 | 704 | $35.1669 | $24,757.50 | 27.98 | | | | | $ (5,059.58) |
| Buy | 1/10/2006 | 495 | $34.9056 | $17,278.27 | 27.98 | | | | | $ (3,428.17) |
| Buy | 2/8/2006 | 93 | $34.8322 | $3,239.39 | 27.98 | | | | | $ (637.25) |
| Buy | 2/9/2006 | 496 | $34.1728 | $16,949.71 | 27.98 | | | | | $ (3,071.63) |
| Buy | 3/8/2006 | 291 | $36.5833 | $10,645.74 | 27.98 | | | | | $ (2,503.56) |
| Buy | 3/10/2006 | 1,112 | $36.0031 | $40,035.45 | 27.98 | | | | | $ (8,921.69) |
| Buy | 3/14/2006 | 458 | $37.3982 | $17,128.38 | 27.98 | | | | | $ (4,313.54) |
| Buy | 4/6/2006 | 765 | $38.8200 | $29,697.30 | 27.98 | | | | | $ (8,292.60) |
| Buy | 4/7/2006 | 1,634 | $37.4419 | $61,180.06 | 27.98 | | | | | $ (15,460.74) |
| Buy | 5/9/2006 | 1,215 | $32.2912 | $39,233.81 | 27.98 | | | | | $ (5,238.11) |
| Buy | 5/12/2006 | 2,672 | $35.3594 | $94,480.32 | 27.98 | | | | | $ (19,717.76) |
| Buy | 5/19/2006 | 848 | $33.0800 | $28,051.84 | 27.98 | | | | | $ (4,324.80) |
| Buy | 6/12/2006 | 526 | $31.1930 | $16,407.52 | 27.98 | | | | | $ (1,690.04) |
| Buy | 6/13/2006 | 1,579 | $30.1200 | $47,559.48 | 27.98 | | | | | $ (3,379.06) |
| | | 28,439 | | $923,583.46 | | | | *Loss on retained shares:* | | $ (127,860.24) |
| | | | | | | | | **TOTAL LOSS:** | **$** | **(91,566.21)** |

**Miami General Employees' & Sanitation Employees' Retirement Trust**
**Loss Calculations in Sunrise Senior Living**
**Class Period: 8/4/05-6/15/06**
**90 day average: 6/16/06-9/14/06 = $27.98**

| Trans | Date | Shares | Price | Cost | 90 day avg | Trans | Date | Shares | Price | Proceeds |
|-------|------|--------|-------|------|------------|-------|------|--------|-------|----------|
| | *opening balance:* | 0 | | | | | | | | |
| Buy | 12/12/2005 | 9585 | 36.293 | $ 347,868.41 | 27.98 | | | | | $ (79,680.11) |
| | | | | | | | | *Loss on retained shares* | | $ (79,680.11) |

**TOTAL LOSS: $ (79,680.11)**

# EXHIBIT F

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
## ATTORNEYS AT LAW

### NEW YORK    *    CALIFORNIA    *    NEW JERSEY    *    LOUISIANA

## FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a firm of 50 attorneys in offices located in New York, California, New Jersey and Louisiana, prosecutes class and private actions, nationwide, on behalf of individual and institutional clients. The firm's litigation practice concentrates in the areas of securities class actions in federal and state courts; corporate governance litigation, including claims for breach of fiduciary duty and proxy violations; antitrust; prosecuting violations of federal and state anti-discrimination laws and vindication of employee rights; and consumer class actions. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the New York City Pension Funds, the largest public pension funds in the United States, collectively managing over $300 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained five of the seven largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements from the investment bank defendants who underwrote WorldCom bonds totaling more than $6 billion, the second largest securities recovery in history. Additionally, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals—20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements had been reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.
.

*Bernstein Litowitz Berger & Grossmann LLP*

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash.  This settlement is the largest ever recovered from a public company and a public accounting firm and includes some of the most significant corporate governance changes ever achieved through securities class action litigation.  The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the class period. In January 2005, the firm announced the $960 million settlement of In re McKesson HBOC Inc. Securities Litigation.  Additionally, the firm was lead counsel in the celebrated In re Washington Public Power Supply System Litigation, which, after seven years of litigation and three months of jury trial, resulted in what was then the largest securities fraud settlement ever – over $750 million.

In 2003, the firm, as Co-Lead Counsel representing numerous public pension fund and institutional investor Lead Plaintiffs, obtained two more of the largest securities settlements in history.  A settlement package composed of cash, stock and warrants currently valued at greater than $600 million resolved the *In re Lucent Technologies, Inc. Securities Litigation*, and DaimlerChrysler agreed to pay $300 million to settle the *In re DaimlerChrysler Securities Litigation.*

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. In combination with prospective BFA asset sales and a settlement with BFA's former law firm, it is expected that the over 11,000 retirees and investors will recover over 70% of their losses. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post*, 60 Minutes II, National Public Radio and the BBC as well as various other international news outlets.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which similarly resulted in the largest settlement ever in a race discrimination case.  The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and will, undoubtedly, serve as a model for public companies into the next century.

On behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA and other institutional investors, the firm successfully prosecuted *McCall v. Scott*, a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history.  This settlement, announced in February 2003, included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements.  In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases. Additionally, the firm has become a leader in the area of Internet Privacy and is counsel in several of the seminal cases that have been brought on behalf of Internet users whose personal information is being intercepted and sent to Web-based companies.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner.  In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

*Bernstein Litowitz Berger & Grossmann LLP*

# THE FIRM'S PRACTICE AREAS

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's class action litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation.

The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. Several of the firm's high-profile current prosecutions and outstanding accomplishments as class counsel are detailed in our Recent Actions and Significant Recoveries section beginning on page 14.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds and one is a certified public accountants. The group has access to state-of-the-art, online financial wire services and databases, which enable them to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders. A major component of the Cendant settlement referenced above is Cendant's agreement to adopt the most extensive corporate governance changes in history.

## Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people

*Bernstein Litowitz Berger & Grossmann LLP*

affected by discriminatory practice in the workplace.  As stated, the firm's practice group recently settled the Texaco Inc. racial discrimination lawsuit for $176 million, the largest settlement in the history of employment discrimination cases.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud and consumer protection issues.  The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages.  The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators.  The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country.  Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer.  For example, in recent actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class.

The group has achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining recent decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases.  Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.  For example, the firm has recently become a recognized leader in the new area of Internet privacy, where it is prosecuting several seminal cases on behalf of Web users whose personal information has been unwittingly intercepted and sent to Internet companies in violation of federal statutes and state law.


## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members.  A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York), has noted, several times on the record, the quality of BLB&G's ongoing representation of the Class in *In re WorldCom, Inc. Securities Litigation*.  Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb
> job. . . .  The Class is extraordinarily well represented in this litigation."

More recently, in granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's
> advocacy and energy....The quality of the representation given by Lead Counsel...has
> been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in
> securities litigation. Lead Counsel has been energetic and creative…. Its negotiations
> with the Citigroup Defendants have resulted in a settlement of historic proportions."

*        *        *

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench….[A]n extraordinarily civilized way of presenting the issues to you [the jury]….We've all been treated to great civility and the highest professional ethics in the presentation of the case…. The evidence was carefully presented to you….They got dry subject matter and made it interesting… [brought] the material alive… good trial lawyers can do that…. I've had fascinating criminal trials

*Bernstein Litowitz Berger & Grossmann LLP*

that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life… It keeps you young…vibrant… [and] involved in things… These trial lawyers are some of the best I've ever seen."

\*   \*   \*

In granting the Court's approval of the resolution and prosecution of in *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\*   \*   \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\*   \*   \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace.  "... the lawyers for the plaintiffs ... did a tremendous, tremendous job. ... not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case ... treating people fairly and with respect can only inure to the benefit of everybody concerned.  I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

\*   \*   \*

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action.  The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation [of the class] was excellent, and ... the results they achieved were substantial and extraordinary."  The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

*Bernstein Litowitz Berger & Grossmann LLP*

\*   \*   \*

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

\*   \*   \*

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

\*   \*   \*

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . . The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation. They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is." The case was settled for $14.5 million.

\*   \*   \*

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class. "I think the job that was done here was simply outstanding. I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves. The class should be very, very pleased with the way this turned out, how expeditiously it's been moved." *In re Computron Software, Inc. Securities Litigation* was a securities fraud class action filed on behalf of shareholders who purchased Computron common stock at inflated prices due to alleged misrepresentation about the company's financial obligation. The case settled for $15 million dollars.

\*   \*   \*

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials. Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997. The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

\*   \*   \*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially. The Court commented that ". . . plaintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . ."

*Bernstein Litowitz Berger & Grossmann LLP*

\*   \*   \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's "... professional standing among its peers." In that case, which was settled for $120 million, our firm served as Chair of Plaintiffs' Executive Committee.

\*   \*   \*

In the landmark securities fraud case, *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs." The Court also observed that "[a] number of attorneys dedicated significant portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . . [T]hey succeeded admirably."

\*   \*   \*

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said:

> Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation...always well prepared, well spoken, and knew their stuff and they were a credit to their profession. They are the top of the line.

\*   \*   \*

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class. While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

\*   \*   \*

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

*Bernstein Litowitz Berger & Grossmann LLP*

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Currently, Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## Securities Class Actions

***In re WorldCom, Inc. Securities Litigation*** -- (United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation allege that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses. The Complaint further alleges a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants. In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion. Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals— 20% of their collective net worth. The case generated headlines across the country—and across the globe—and is changing the way Wall Street does business. In the words of Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in their jobs." After four weeks of trial, Arthur

Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements had been reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

***In re Cendant Corporation Securities Litigation*** -- (United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young, its auditors. Cendant settled the action for $2.8 billion and Ernst & Young settled for $335 million. The settlements are the second largest in history in a securities fraud action. Plaintiffs allege that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant has restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein. The firm represents Lead Plaintiffs **CalPERS** - the **California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

***Baptist Foundation of Arizona v. Arthur Andersen, LLP*** -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles, allowed BFA's undisclosed losses to escalate to

*Bernstein Litowitz Berger & Grossmann LLP*

hundreds of million of dollars, and ultimately resulted in its demise. On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation. The court approved the settlement on September 13, 2002 and, ultimately, investors are expected to recover 70% of their losses.

***HealthSouth Corporation Bondholder Litigation*** -- (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations have disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the last five years. A number of executives at HealthSouth, including its most senior accounting officers -- including every chief financial officer in HealthSouth's history -- have pleaded guilty to criminal fraud charges. In the wake of these disclosures, numerous securities class action lawsuits have been filed against HealthSouth and certain individual defendants. On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class. During the period of the fraud, HealthSouth issued over $3 billion of bonds to the unsuspecting investment community.

***In re McKesson HBOC, Inc. Securities Litigation*** -- (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities. On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have restate its previously reported financial results. Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value. On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in

the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999. The complaint alleges that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities. On September 28, 2005, the court granted preliminary approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company. The action continues against several other remaining defendants.

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*** -- (United States District Court for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class includes all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleges that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleges that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery.

***In re Washington Public Power Supply System Litigation*** -- (United States District Court, District of Arizona) Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class. The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of

*Bernstein Litowitz Berger & Grossmann LLP*

over $750 million – then the largest securities fraud settlement ever achieved.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package which is currently valued at approximately $517 million composed of cash, stock and warrants. The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marks the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court has reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

***In re DaimlerChrysler Securities Litigation*** -- (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of

investors who exchanged their Chrysler Corporation shares for DaimlerChrysler shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000. On August 22, 2003, BLB&G, as Co-Lead Counsel for Plaintiffs, obtained an agreement in principle to settle the action for $300 million.

***In re 3Com Securities Litigation*** -- (United States District Court, Northern District of California). Class action on behalf of purchasers of 3Com common stock, alleging that defendants knowingly and recklessly caused 3Com to issue materially false and misleading statements to the financial community regarding the company's products, inventory and distribution. The complaint further alleges insider trading on these publicly disseminated materially false and misleading statements. The firm represented Lead Plaintiffs the **Louisiana School Employees' Retirement System** and the **Louisiana Municipal Police Employees' Retirement System**. This action resulted in the largest settlement - $259 million - ever obtained from a corporate defendant in a securities fraud class action in the Ninth Circuit.

***In re Conseco, Inc. Securities Litigation*** -- (United States District Court for the Southern District of Indiana) Securities fraud class action. On March 31, 2000, Conseco Inc. had announced that it would take a $350 million charge as a result of losses on its interest-only securities. Additionally, the company announced that it would also take a substantial charge on the future sale of Conseco Finance. Conseco Finance, formerly known as Greentree, is a wholly-owned subsidiary of Conseco that was acquired in 1998 for over $6 billion, and specializes in the consumer financing business. On April 14, 2000, Conseco restated its earnings for the first three quarters of 1999 and the second quarter of 1998. Various complaints, subsequently consolidated, allege violations of the Securities Act of 1933 and the Exchange Act of 1934. The action has recently settled for $120 million. The firm was appointed Lead Counsel in this action on behalf of its clients, the **Anchorage Police & Fire Retirement System** and the **State of Louisiana Firefighters' Retirement System**, Lead Plaintiffs in the case.

***In re Bennett Funding Group Securities Litigation*** -- (United States District Court, Southern District of New York). Investor class action involving the sale of $570 million in fraudulent investments, described as the largest "Ponzi" scheme in United States

10

*Bernstein Litowitz Berger & Grossmann LLP*

history. The action was prosecuted against over fifty defendants including Bennett's former auditors, insurers and broker-dealers who sold Bennett investment. The class includes all purchasers of Bennett securities from March 29, 1992 through March, 29, 1996. The action settled with multiple defendants for over $165 million.

***In re Legato Systems, Inc. Securities Litigation*** -- (United States District Court for the Northern District of California {San Jose}) This securities fraud class action alleges that Legato Systems, Inc. and certain of its officers overstated the Company's fiscal 1999 financial results. The resultant need for a restatement of the company's financial reports caused by improper accounting practices led to a loss in the value of the stock and the plaintiff class of shareholders seek recovery of said losses. In April 2002, Legato agreed to settle the case for $85 million and the Court granted final approval of the settlement on July 31, 2002. The firm represents the **Policemen and Firemen Retirement System of the City of Detroit** as Lead Plaintiff in the action.

***Independent Energy Holdings Litigation*** -- (United States District Court for the Southern District of New York) Securities fraud class action against Independent Energy Holdings PLC filed on behalf of all persons or entities who, from February 14, 2000 through September 8, 2000 (the "Class Period"): (1)

purchased or acquired Independent Energy American Depository Shares ("depository shares") that were issued in a secondary offering pursuant to the Registration Statement and Prospectus filed with the SEC on form F-3 that was declared effective on March 28, 2000; (2) otherwise purchased or acquired those depository shares; (3) if residing in the United States or its territories, purchased or acquired ordinary shares of Independent Energy; (4) or any combination thereof. The Complaint alleges that the registration statement and prospectus for the Secondary Offering, declared effective on or about March 28, 2000 failed to disclose an investigation of the Company by the Office of Gas and Electricity Markets ("OFGEM"), an energy regulator in the United Kingdom, and contained materially false and misleading facts and omitted certain material facts relating to the Company's billing and customer service problems as well as problems relating to its third party service provider. The Complaint also alleges that various other statements prior and subsequent to the Registration Statement which are attributable to certain of the Defendants were also materially false and misleading for many of the same reasons. In May 2002, the Court certified the Class. BLB&G, Court-appointed Lead Counsel for the Class, represents the Court-appointed Lead Plaintiffs and Class Representatives in this action. On September 26, 2003, the Court granted final approval of two settlements totaling $48 million.

## Corporate Governance and Shareholders' Rights

***McCall v. Scott*** -- (United States District Court, Middle District of Tennessee). A derivative action filed on behalf of Columbia/HCA Healthcare Corporation -- now "HCA" -- against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represents the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California Public Employees' Retirement System** ("**CalPERS**"), the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association** ("**LACERA**") in this action. Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court. On

February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court. As part of the settlement, HCA will adopt a corporate governance plan that goes well beyond the requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA. HCA also will receive $14 million. Under the sweeping governance plan, the HCA Board of Directors will be substantially independent, and will have increased power and responsibility to oversee fair and accurate financial reporting. In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

11

*Bernstein Litowitz Berger & Grossmann LLP*

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.*** -- (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("HIS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000. The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants "consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.*** -- (United States District Court for the Southern District of New York) Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company. Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***GMAC/NMAC/Ford/Toyota/Chrysler Consumer Finance Discrimination Litigation*** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and Chrysler Financial cause black and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants. On February 24, 2003, the Honorable Todd J. Campbell of the States District Court for the Middle District of Tennessee granted preliminary approval of the settlement of the class action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC will offer pre-approved loans to hundreds of thousands of current and potential black and Hispanic NMAC customers, and will limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate. The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers. The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit. Other car buyers wishing to recover damages will still be able to sue NMAC separately. BLB&G continues to prosecute the actions against the other auto lenders.

***Alexander v. Pennzoil Company*** -- (United States District Court, Southern District of Texas) A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other job related practices. The action settled for $6.75 million.

***Butcher v. Gerber Products Company*** -- (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

*Bernstein Litowitz Berger & Grossmann LLP*

## Consumer Class Actions

***E*Trade Group, Inc.*** -- (Superior Court of California, Santa Clara County)  A class action filed on behalf of all individuals who have or had accounts with E*Trade from September 1996 to the present. The complaint alleges that E*Trade's representations to customers regarding the manner in which their accounts would be handled were false and misleading; that the electronic trading systems were inadequate to meet customer demands; and that, as a result of these misrepresentations, customers suffered significant losses and have been deprived of the benefits which E*Trade had represented they would receive.

***General Motors Corporation*** -- (Superior Court of New Jersey Law Division, Bergen County)  A class action consisting of all persons who owned W-body cars with defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage.  BLB&G is co-lead counsel in this case where a proposed settlement would provide $19.5 million to the class for reimbursement of brake repairs.

***Rent-A-Center*** -- (Supreme Court of the State of New York, Bronx County)  Deceptive sales and marketing in "rent-to-own" transactions.  In this case, BLB&G recently obtained a landmark ruling upholding a rental-purchasers' right to bring suit.

***Empire Blue Cross*** -- (United States District Court, Southern District of New York)  Overcharging health care subscribers.  BLB&G was lead counsel in a recently approved $6.6 million settlement that represented 130% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

***DoubleClick*** -- (United States District Court, Southern District of New York).  Internet Privacy.  A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency.   In the settlement agreement reached in this action, DoubleClick commits to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services.  This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

## Toxic/Mass Torts

***Fen/Phen Litigation ("Diet Drug" Litigation)*** -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas)  The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin. The suits allege that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening. The complaint alleges that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians.  This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

*Bernstein Litowitz Berger & Grossmann LLP*

## CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

*Bernstein Litowitz Berger & Grossmann LLP*

# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and pro bono activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing pro bono legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

*Bernstein Litowitz Berger & Grossmann LLP*

# THE MEMBERS OF THE FIRM

**MAX W. BERGER**, a founding partner of the firm, supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients. Mr. Berger has litigated many of the firm's most high profile and significant cases. Together, with other partners at the firm, he has obtained five of the largest securities fraud recoveries in history—the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation*, the $3.2 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $960 million partial settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.

Mr. Berger's role in the *WorldCom* case received extensive media attention and has been the subject of feature articles in numerous major publications including *BusinessWeek* and *The American Lawyer*. For their outstanding efforts on behalf of the *WorldCom* Class, *The National Law Journal* profiled Mr. Berger and his partner Sean Coffey (two of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. In May 2006, he was presented with the "Distinguished Alumnus Award" for his many and varied contributions to Baruch College. Mr. Berger has also been selected as an Advisor to the American Law Institute, Restatement Third of Torts, and he currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. Additionally, Mr. Berger has taught Profession of Law, an ethics course at Columbia.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers For Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community.

Mr. Berger received an Accounting degree from the Baruch School of the City College of New York in 1968. At Baruch, he was President of the student body and won numerous awards.

Mr. Berger received his J.D. from Columbia Law School in 1971, where he was an editor of the *Columbia Survey of Human Rights Law*.

ADMISSIONS: Admitted to bar, 1972, New York. 1973, U.S. District Court, Southern District of New York. 1973, U.S. Court of Appeals, Second Circuit. 1975, U.S. District Court, Eastern District of New York. 1992, U.S. District Court, District of Arizona. 1999, U.S. Supreme Court.

****

**EDWARD A. GROSSMANN**, one of the firm's founding partners, graduated *cum laude* from the University of Wisconsin in 1970 and the University of Michigan School of Law in 1973.

Mr. Grossmann served as lead counsel in the Prudential-Bache Energy Income Limited Partnership and the *In re Bennett Funding Group* class actions, well-publicized cases which have each settled for in excess of $120 million.

He is a past chairman of the Class and Derivative Action Trials Subcommittee of the Litigation Section of the American Bar Association and a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America and has lectured for that organization. Mr. Grossmann is a member of the Committee of Visitors of the University of Michigan Law School and a member of the Committee of Visitors of the University of Wisconsin Center for Jewish Studies. He is also past President of the JCC on the Palisades and is currently a trustee of the UJA Federation of Northern New Jersey.

*Bernstein Litowitz Berger & Grossmann LLP*

ADMISSIONS: Admitted to bar, 1974, New York. 1974, U.S. District Court, Southern and Eastern Districts of New York. 1975, U.S. Court of Appeals, Second Circuit. 1990, U.S. Court of Appeals, Third Circuit.

****

**JOHN P. ("SEAN") COFFEY** is a graduate of the United States Naval Academy ("U.S.N.A."), receiving a B.S. in Ocean Engineering, *with merit*, in 1978. He received his J.D., *magna cum laude*, from Georgetown University Law Center in 1987, where he was Articles Editor of the *Georgetown Law Journal*, a member of the Order of the Coif, and recipient of the Charles A. Keigwin Award for academic excellence.

Before graduating from law school, Mr. Coffey was a Commissioned Officer in the United States Navy, where he served as a P-3C Orion patrol plane mission commander, an Intern in the Organization for the Joint Chiefs of Staff, and the personal military aide to Vice President George H.W. Bush. After leaving active duty to pursue his legal career, Mr. Coffey continued to serve in the Navy Reserve, where he commanded a P-3C squadron and the Reserve component of the *Enterprise* carrier battle group staff, and served for four years as a Captain in the Office of the Secretary of Defense at the Pentagon. In August 2004, he retired from the Navy after thirty years of uniformed service.

Mr. Coffey served as an Assistant United States Attorney for the Southern District of New York from 1991 to 1995, where he conducted numerous complex fraud investigations and tried many cases to verdict.

Since joining BLB&G in 1998, Mr. Coffey has served as the lead trial attorney in two of the most notable fraud cases ever to go to trial. In April 2005, Mr. Coffey and his BLB&G team completed their prosecution of the *WorldCom* securities class action—a prosecution that yielded a record-breaking recovery for defrauded investors of over $6.15 billion—by taking the lone non-settling defendant, WorldCom's former auditor Arthur Andersen LLP, to trial. Mr. Coffey's role in the *WorldCom* prosecution was featured in a December 2004 article in *The American Lawyer* entitled "Taking Citi To School" and a November 2005 article in *The American Lawyer* entitled "Breaking The Banks."

In 2002, in another trial against Andersen, this time arising out of the collapse of the Baptist Foundation of Arizona, *BFA Liquidation Trust v. Arthur Andersen LLP*, the largest non-profit bankruptcy in U.S. history, Mr. Coffey obtained a $217 million settlement, one of the largest amounts ever paid by an accounting firm.

Mr. Coffey currently serves as court-appointed Lead Counsel representing investors in the *HealthSouth*, *Nortel*, *Refco*, and *Delphi* litigations.

Mr. Coffey has been profiled in *The Wall Street Journal*, *American Lawyer*, and *BusinessWeek*, and was featured on "The Wall Street Fix" on PBS' *Frontline*. Mr. Coffey and senior BLB&G partner Max Berger were named two of the 2005 "Winning Attorneys of the Year" by the *National Law Journal*, and the September 2005 issue of *Bloomberg Markets* profiled Mr. Coffey as "Wall Street's New Nemesis."

Prior to joining BLB&G, Mr. Coffey was a litigation partner with Latham & Watkins and an Adjunct Professor of Law at Fordham University. He serves as Vice President of the U.S.N.A. Class of 1978 and is a member of the Board of Directors of The Community Fund of Bronxville, Eastchester, Tuckahoe, Inc., in Westchester County, N.Y. He is also a member of the Federal Bar Council, the American Bar Association, the Association of the Bar of the City of New York, and the Trial Lawyers for Public Justice Foundation.

ADMISSIONS: Admitted to bar, 1988, New York. 1989, U.S. District Court, Southern District of New York. 1992, U.S. Court of Appeals, Second Circuit. 1995, U.S. District Court, Western District of New York. 1998, U.S. District Court, Eastern District of New York. 1999, New Jersey.

****

**DARNLEY D. STEWART** graduated from Princeton University in 1984 and Northeastern University School of Law in 1990.

Ms. Stewart served as law clerk to the Hon. R. Ammi Cutter and the Hon. Mel L. Greenberg of the Massachusetts Court of Appeals from 1990-1991.

Ms. Stewart is the partner principally responsible for the firm's employment discrimination and employee rights practice group. She has acted as co-lead counsel in many of the firm's high profile discrimination cases, including Rapier, et al. v. Ford Motor Company, Inc., which resulted in one of the largest sexual harassment class action settlements in history.

*Bernstein Litowitz Berger & Grossmann LLP*

More recently, Ms. Stewart has achieved major victories on behalf of minority car buyers with the landmark settlements of class action consumer discrimination lawsuits against General Motors Acceptance Corporation, ("GMAC"), Nissan Motor Acceptance Corporation, ("NMAC"), and DaimlerChrysler. At issue in these actions is a discriminatory credit pricing system under which minorities typically pay as much as 50% more in dealer "mark-up." She continues to prosecute several similar class actions against Ford Motor Credit Company, Toyota Motor Credit Corporation and Chrysler Financial Company.

For her outstanding efforts on behalf of the public interest in GMAC, which resulted in historic reforms, including dealer mark-up caps and special financing rates for minority car buyers, Ms. Stewart was honored as a "Trial Lawyer Of The Year" finalist in May 2004, by Trial Lawyers for Public Justice, a national public interest law firm dedicated to using trial lawyers' skills and resources to create a more just society.

Ms. Stewart is a member of the Class and Collective Action Committee of the National Employment Lawyers Association and is Vice-President of the Executive Board of the New York affiliate (NELA/NY) of that organization. She is a member of the Individual Rights and Responsibilities Committee of the New York State Bar Association, and serves as Plaintiffs' Co-Chair of the Class Action Subcommittee of the American Bar Association's Employment Rights and Responsibilities Committee and Programs Co-Chair of the Technology Committee of the American Bar Association's Labor and Employment Section. Ms. Stewart regularly lectures and writes on employment class action litigation.

ADMISSIONS: Admitted to the bar, 1990, Massachusetts. 1993, New York. 1993, U.S. District Court, Southern District of New York. 1998, U.S. District Court, Western District of Michigan. 2000, U.S. Court of Appeals, Sixth Circuit. 2001, U.S. Court of Appeals, Second Circuit. 2001, U.S. Court of Appeals, Third Circuit.

****

**STEVEN B. SINGER** joined BLB&G is 1994.  He has been responsible for prosecuting a number of the largest securities fraud cases in history. Mr. Singer was one of the lead trial lawyers on the *WorldCom Securities Litigation*, which culminated in a four-week trial against WorldCom's auditors, and resulted in the historic recovery of over $6.15 billion from the professionals associated with the WorldCom debacle—the second largest recovery in history. He has also been responsible for numerous additional high-profile litigations, including *In re Lucent Technologies Securities Litigation*, which resulted in the fifth largest settlement of all time; *In re 3Com Securities Litigation*, the largest securities fraud class action recovery in Ninth Circuit history; and a multi-million dollar private action arising out of the demise of Lernout & Hauspie.

Mr. Singer has also distinguished himself in the Firm's other practice areas, securing large recoveries for victims of discrimination and consumer fraud. In 1997, the Trial Lawyers for Public Justice named Mr. Singer as a finalist for "Trial Lawyer of the Year" for his role in the prosecution of the celebrated race discrimination litigation, *Roberts v. Texaco*, which resulted in the largest discrimination settlement in history.

Mr. Singer frequently lectures at the Firm's *Institutional Investor Forum* and is an active member of the New York State and American Bar Associations. He is also a speaker at various continuing legal education programs offered by the Practicing Law Institute ("PLI").

Mr. Singer received his B.A., cum laude, from Duke University in 1988 and his J.D. from Northwestern University School of Law in 1991.

ADMISSIONS: Admitted to the bar, 1992, New York. 1992, U.S. District Courts, Eastern and Southern Districts of New York.

****

**CHAD JOHNSON** is involved in all areas of the firm's litigation practice, with particular emphasis on prosecuting securities fraud actions, complex commercial litigation, patent litigation, and trial practice.

Among other matters, Mr. Johnson was one of the partners who prosecuted the *In re WorldCom, Inc. Securities Litigation*—resulting in a recovery for investors of over $6.15 billion after five weeks of trial—one of the largest securities fraud recovery in history. Mr. Johnson also oversaw the firm's prosecution of *In re Williams Securities Litigation* in the United States District Court for the Northern District of Oklahoma.  The Williams case required a massive undertaking by BLB&G, including the need to take and defend 170 depositions and to review

*Bernstein Litowitz Berger & Grossmann LLP*

and analyze over 18 million pages of documents. The case proceeded through class certification discovery, fact discovery, expert discovery, summary judgment, and trial preparation. Shortly before trial, BLB&G and the Lead Plaintiffs were able to obtain a total recovery from the defendants of $311 million. This is among the largest recoveries ever achieved in a securities class action in which the corporate defendant did not restate its financial results and where the SEC did not obtain any recovery for investors. Mr. Johnson was also one of the partners responsible for prosecuting the *OM Group Securities Litigation*, which resulted in a $92.4 million recovery for investors.

Mr. Johnson is responsible for overseeing the firm's prosecution of the federal derivative action against the individuals involved in the options backdating scandal at *UnitedHealth Group, Inc.* That case is pending in the United States District Court for the District of Minnesota. In connection with that lawsuit, BLB&G represents several public pension funds, all of whom are Court-appointed Lead Plaintiffs in the case. Since the initiation of that lawsuit, the company has effectively acknowledged that it engaged in options backdating—and the company's Chairman and CEO (and a recipient of hundreds of millions of dollars of apparently backdated stock options), William McGuire, has been forced out of the company because of his involvement in the scandal.

Mr. Johnson is overseeing the firm's prosecution (with co-counsel) of numerous patent litigations now pending against major electronics manufacturers including Nikon, Samsung, LG Phillips, and others. These patent litigations relate to the technology used to manufacture flat panel displays, including LCD televisions, as well as well as semi-conductor chips. The technology at issue was developed by a New York-based manufacturing company, *Anvik Corporation*, which holds the patents at issue. As alleged in the complaints, the technology was subsequently misappropriated by certain companies based overseas. The cases allege that the defendants are manufacturing products sold into the United States using Anvik's patented technology without Anvik's permission. The revenues defendants are generating using Anvik's patented technology, as alleged in the complaints, is in the hundreds of millions, if not billions, of dollars per year. These cases are all pending in the United States District Court for the Southern District of New York.

Prior to joining the firm, Mr. Johnson was a partner with Latham & Watkins, where he practiced for ten years. While with Latham & Watkins, he represented investment banks, accounting firms, law firms, boards of directors, and both publicly and privately held companies. Mr. Johnson has extensive experience in the areas of securities and professional liability litigation, complex commercial litigation, patent litigation, and international arbitration. He has handled a variety of matters before federal and state courts, as well as arbitration tribunals both in the United States and abroad, including the International Chamber of Commerce, the London Court of International Arbitration, the Netherlands Arbitration Institute, the Permanent Court of Arbitration, the American Arbitration Association, and JAMS/Endispute.

Mr. Johnson graduated from Harvard Law School, *cum laude*, where he was president of the Harvard Law School Forum. He also graduated from the University of Michigan, *with high distinction*, where he was an Angell scholar.

ADMISSIONS: Admitted to bar, 1993, Illinois and District of Columbia. 1998, New York.ADMISSIONS: Admitted to bar, 1993, Illinois and District of Columbia. 1998, New York.

****

**J. ERIK SANDSTEDT** has been a partner with the firm since 2003, and he has represented firm clients in some of the most significant securities fraud class actions in history. He was recently named as one of America's top 500 "rising stars" in the legal profession by *Lawdragon* magazine, and one of New Jersey's "top 40 lawyers under 40" by the *New Jersey Law Journal*. Mr. Sandstedt received his B.A., with distinction, from the University of North Carolina at Chapel Hill, and his J.D. from Columbia University School of Law, where he was a Harlan Fiske Stone Scholar and an Editor of the *Columbia Journal of Law and Social Problems*.

In 2004, Mr. Sandstedt was one of the lead trial lawyers representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history. Together with other firm partners, he was also responsible for the $300 million settlement in *In re Bristol-Myers Squibb Securities Litigation*, a $48 million recovery in *In re Independent Energy Holdings Securities Litigation*, and a multi-million dollar recovery in a private action arising out of the massive securities fraud perpetrated at Lernout & Hauspie. Mr. Sandstedt is currently the lead trial attorney prosecuting *In re Omnicom*

*Bernstein Litowitz Berger & Grossmann LLP*

*Group, Inc. Securities Litigation* in the Southern District of New York and *In re Suprema Specialties, Inc. Securities Litigation* in the District of New Jersey.

Before joining the firm, Mr. Sandstedt was the Deputy Chief of Staff of the Criminal Division of the United States Department of Justice. In that capacity, he was responsible for the development and implementation of criminal justice policy, overseeing major prosecutions and legislative initiatives, and managing the day-to-day affairs of the Division. Of particular note, Mr. Sandstedt helped coordinate the response of federal law enforcement to the events of September 11, 2001, and was involved with negotiating and drafting portions of the USA Patriot Act.

From 1998 through 2001, Mr. Sandstedt was an Assistant United States Attorney in the Special Prosecutions and Criminal Divisions of the United States Attorney's Office for the District of New Jersey. There, he conducted numerous complex fraud and corruption investigations and tried many cases to verdict. He also led the District's efforts to combat money laundering as the head of a task force consisting of agents from the IRS, FBI, DEA, U.S. Postal Inspection Service and U.S. Customs, and he served as the liaison to the IRS Criminal Investigations Division with respect to all criminal tax matters. Mr. Sandstedt won numerous awards and commendations as a federal prosecutor, and he was an Associate of the Edward Bennett Williams Inn of Court. He has also served as an Instructor at Columbia Law School's Professions of Law Program, an Adjunct Professor at Seton Hall University School of Law, and a lecturer on "The Role of the Federal Prosecutor" at Washington, DC area law schools.

Mr. Sandstedt serves as the partner in charge of the firm's New Jersey office and is an active member of the state and federal bar associations in both New York and New Jersey.

ADMISSIONS: Admitted to bar, 1995, New Jersey and U.S. District Court for the District of New Jersey. 1996, New York and U.S. District Courts for the Southern and Eastern Districts of New York. 1998, U.S. Court of Appeals, Third Circuit. 2004, U.S. Court of Appeals, First Circuit.

****

**GERALD H. SILK**'s practice focuses on representing public pension funds and other institutional investors on matters involving federal and state securities laws, accountants' liability and the fiduciary duties of corporate officials. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context. Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels clients on potential legal claims. He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of *Bloomberg Markets* magazine, which detailed his work for the firm in this capacity. He was also named one of America's top 500 "rising stars" in the legal profession and one of 3000 Leading Plaintiffs' Lawyers in America by *Lawdragon* magazine. Additionally, Mr. Silk was selected for inclusion in the list of 2006 *New York Super Lawyers*.

Most recently, Mr. Silk is one of the partners at the firm responsible for advising institutional shareholder clients on legal matters arising out of the options backdating scandal. He is currently representing several institutional investors in the options backdating case, *In re UnitedHealth Group, Inc. Shareholder Derivative Litigation*, pending in the District of Minnesota. Mr. Silk has appeared frequently in the news as a commentator on option backdating issues, including on *CNBC's Morning Call*, *The Financial Times*, *The National Law Journal* and the *New York Law Journal*.

He is also currently representing shareholders in New York State Supreme Court against certain officers and directors of *Cablevision Systems Corporation* alleging breaches of fiduciary duties by the controlling shareholders in attempting to take the company private for an unfair price. Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*, a case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy. The Independent Energy litigation was resolved for $48 million. Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

*Bernstein Litowitz Berger & Grossmann LLP*

Mr. Silk received a B.S. in economics from the Wharton School of Business, University of Pennsylvania in 1991, and a J.D., *cum laude*, from Brooklyn Law School in 1995. In 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York. Prior to joining the firm in 1998, Mr. Silk was an associate in the Business and Securities Litigation Department at Weil, Gotshal & Manges LLP, where he was primarily involved in defending securities cases and counseling boards of directors on corporate governance matters.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 St. John's Law Review 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", New York Business Law Journal, Vol. 1, No. 1 (Fall 1997).

ADMISSIONS: Admitted to bar, 1996, New York. 1997, U.S. District Courts for the Southern and Eastern Districts of New York.

**** 

**BLAIR A. NICHOLAS** has successfully represented numerous public pension funds and other institutional investors in high-profile actions involving federal and state securities laws, accountants' liability, and corporate governance matters. In January 2007, *The American Lawyer* named him one of its "Fab Fifty Young Litigators"—one of the top 50 litigators in the country, 45 and under, who have "made their marks already and whom [they] expect to see leading the field for years to come."

Mr. Nicholas has extensive trial experience, including having recently served as one of the lead trial counsel in *In re Clarent Corporation Securities Litigation*, a securities fraud class action prosecuted before the Federal District Court for the Northern District of California. After a four week jury trial, in which Mr. Nicholas delivered the closing argument, the jury returned a securities fraud verdict in favor of investors against the former Chief Executive Officer of Clarent.

Mr. Nicholas was one of the principal attorneys responsible for prosecuting the *In re Williams Securities Litigation*, a securities fraud class action that recently settled shortly before trial for $311 million. Mr. Nicholas has also prosecuted and successfully resolved a number of high-profile securities class actions, including *In re Informix Securities Litigation*, resolved for $142 million; *In re Gemstar Securities Litigation*, resolved for $92.5 million; *In re Legato Systems Securities Litigation*, resolved for $85 million; *In re Network Associates Securities Litigation*, resolved for $70 million; and *In re Finova Group Securities Litigation*, resolved for $42 million.

Mr. Nicholas has lectured to institutional investors and has written articles relating the application of the federal and state securities laws, including the article entitled "Reforming the Reform Act and Restoring Investor Confidence in the Securities Markets," which was published in the *Securities Reform Act Litigation Reporter* (Vol. 13, No. 4, July 2002).

Mr. Nicholas received a B.A. in Economics from the University of California, Santa Barbara and received his J.D. from the University of San Diego School of Law, where he served as Lead Articles Editor of the *San Diego Law Review*. He currently serves as Vice President on the Executive Committee of the San Diego Chapter of the Federal Bar Association. Mr. Nicholas is also an active member of the Association of Business Trial Lawyers of San Diego, Litigation Section of the State Bar of California, and the San Diego County Bar Association. He practices in the firm's California office.

ADMISSIONS: Admitted to bar, 1995, California. 1996, Ninth Circuit Court of Appeal. 1996, U.S. District Courts for the Southern, Central and Northern Districts of California. 1996, U.S. District Court for the District of Arizona (1996).

**** 

**DAVID R. STICKNEY** practices in the firm's California office, where he focuses on complex litigation in state and federal courts nationwide. Mr. Stickney has prosecuted a number of the firm's prominent cases, including, among others, *In re McKesson Securities Litigation*. In that case, a partial settlement was reached for $960 million, the largest settlement for any securities class action within the Ninth Circuit. Mr. Stickney has also prosecuted and

*Bernstein Litowitz Berger & Grossmann LLP*

successfully resolved a number of additional prominent cases, including *Wyatt v. El Paso Corp.*, which recently settled for $285 million; *BFA Liquidation Trust v. Arthur Andersen LLP*, which settled during trial for $217 million; and *In re EMAC Securities Litigation*, which settled on undisclosed terms before trial.

During 1996-1997, Mr. Stickney served as law clerk to the Honorable Bailey Brown of the United States Court of Appeals for the Sixth Circuit. Mr. Stickney received his J.D. from The University of Cincinnati College of Law in 1996, where he was a Jacob B. Cox Scholar and Lead Articles Editor of The University of Cincinnati Law Review. Mr. Stickney received his B.A. from the University of California at Davis in 1993.

Mr. Stickney lectures on securities litigation and shareholder matters, including for seminars and programs sponsored by the Practicing Law Institute and Glasser Legalworks, among others. He has also authored and co-authored several articles concerning securities litigation and class actions. His professional affiliations include the Association of Business Trial Lawyers.

ADMISSIONS: Admitted to bar, 1997, California. 1997, U.S. Court of Appeals for the Sixth and Ninth Circuits. 1997, U.S. District Courts for the Northern, Southern and Central Districts of California.

\*\*\*\*

**SALVATORE J. GRAZIANO,** an experienced trial attorney, has taken a leading role in a number of major securities fraud class actions including cases against: (i) Raytheon Company and PricewaterhouseCoopers LLP, total recoveries of $460 million; (ii) MicroStrategy, Inc. and PricewaterhouseCoopers LLP, total recoveries valued in excess of $150 million; (iii) i2 Technologies, Inc. and Arthur Andersen LLP, total recovery of $87.75 million; and (iv) Aetna, Inc., total recovery of $82.5 million.

Mr. Graziano has litigated cases resulting in favorable decisions for securities investors nationwide, including the seminal Second Circuit decision of *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), interpreting the pleading standards of the Private Securities Litigation Reform Act of 1995.

Upon graduation from law school, Mr. Graziano served as an Assistant District Attorney in the Manhattan District Attorney's Office. He has over 10 years of securities fraud civil litigation experience. He is presently a member of the Financial Reporting Committee of the Association of the Bar of the City of New York and previously served on the Securities Regulation Committee of the New York City Bar Association. Mr. Graziano has been a panelist on numerous CLE litigation programs.

Mr. Graziano graduated from New York University College of Arts and Science in 1988, *cum laude*, with a B.A. in psychology, with honors, and thereafter received his J.D., *cum laude*, from New York University School of Law in 1991.

ADMISSIONS: Admitted to bar, 1992, New York. 1995, U.S. District Courts for the Southern and Eastern Districts of New York. 1999, U.S. Court of Appeals for the Second Circuit. 2002, U.S. Court of Appeals for the Eleventh Circuit. 2003, U.S. Court of Appeals for the First Circuit.

\*\*\*\*

**WILLIAM C. FREDERICKS** graduated with high honors from Swarthmore College in 1983 with a B.A. in political science, and earned his M.Litt. degree in international relations from Oxford University (England) in 1988. In 1988, he also received his J.D. from Columbia University, where he was a three-time Harlan Fiske Stone Scholar, a Columbia University International fellow, an articles editor of *The Columbia Journal of Transnational Law*, and the recipient of the Beck Prize in property law, the Toppan Prize in advanced constitutional law, and the Greenbaum Prize for written advocacy. A panel chaired by Justice Antonin Scalia also awarded Mr. Fredericks the Gov. Thomas E. Dewey Prize for best oral argument in the final round of the 1988 Harlan Fiske Stone Moot Court Competition. After law school, Mr. Fredericks clerked for the Hon. Robert S. Gawthrop III of the U.S. District Court for the Eastern District of Pennsylvania, and then spent seven years practicing securities and complex commercial litigation as an associate at Simpson Thacher & Bartlett and Willkie Farr & Gallagher before moving to the plaintiffs' side of the bar in 1997.

Mr. Fredericks has represented investors as a lead or co-lead counsel in over two dozen securities class actions, notably *In re Rite Aid Securities Litigation* (E.D. Pa.) (total settlements of $323 million, including the then-second largest securities fraud settlement ever against a big-four accounting firm); *In re Sears Roebuck & Co. Securities Litigation* (N.D. Ill.) ($215 million settlement announced, subject to judicial approval); and *Irvine v.*

*Bernstein Litowitz Berger & Grossmann LLP*

*Imclone Systems, Inc.* (S.D.N.Y.) ($75 million settlement). Mr. Fredericks has also successfully represented several institutional clients (including Mexico's TV Azteca and Australia's Australis Media Group) in private commercial disputes at both the trial and appellate level. See, e.g., *National Broadcasting Co. v. Bear Stearns & Co., et al.*, 165 F.3d 184 (2d Cir. 1999); *News Ltd. v. Australis Holdings Pty. Limited*, 728 N.Y.S. 2d 667 (1st Dep't 2001) and 742 N.Y.S. 2d 190 (1st Dep't 2002).

Mr. Fredericks has been a panelist on a variety of litigation programs sponsored by various organizations, including the Practising Law Institute (PLI) and the American Law Institute/American Bar Association (ALI/ABA). He is a member of the Association of the Bar of the City of New York, and a former chairman of the Association's Committee on Military Affairs and Justice.

Mr. Fredericks is admitted to practice before the courts of New York State, the U.S. District Courts for the Southern and Eastern Districts of New York and the District of Colorado, and the U.S. Courts of Appeals for the Second, Third, Sixth and Tenth Circuits. He has also been admitted *pro hac vice* by, and argued before, the Supreme Court of the State of New Jersey (see *Kaufman v. I-Stat Corp.*, 165 N.J. 94 (2000).)

****

**JEFFREY N. LEIBELL** specializes in prosecuting securities class actions as well as derivative actions involving breaches of fiduciary duty and corporate governance on behalf of the firm's clients.

A Certified Public Accountant, Mr. Leibell served as a Senior Manager in the Audit Department of Deloitte & Touche LLP, where he audited "Fortune 500" and other companies in a variety of industries, prior to attending law school. Since joining the firm in 1996, he has prosecuted a number of the firm's most significant cases, including *In re Cendant Corporation Securities Litigation*, which resulted in a $3.2 billion settlement, and *McCall v. Scott*, the Columbia/HCA Derivative Litigation.

He received his B.S., *cum laude*, in Accounting from Brooklyn College of the City University of New York in 1979, and a J.D. from Columbia University in 1992, where he was the Senior Notes Editor of the *Columbia Business Law Review* and a Harlan Fiske Stone Scholar. Mr. Leibell is the author of "Accountant's Liability in the Savings & Loan Crisis: An Argument in Favor of Affirmative Defenses."

Mr. Leibell is a member of the New York State Society of Certified Public Accountants, the New York State Bar Association and the American Bar Association.

ADMISSIONS: Admitted to bar, 1992, New York. 1993, U. S. District Court for the Southern and Eastern Districts of New York. 1995, U. S. Court of Appeals, Second Circuit. 1996, U. S. District Court for the Eastern District of Michigan. 1999, U.S. Court of Appeals, Sixth Circuit. 2000, U.S. District Court for the District of Colorado; U.S. Court of Appeals, Third Circuit. 2004, U.S. Court of Appeals, Fourth Circuit.

****

**JOHN C. BROWNE** received his B.A. in Economics, *magna cum laude*, in 1994 from James Madison University and his J.D., *cum laude*, in 1998 from Cornell Law School where he was General Editor of the *Cornell Law Review*.

Prior to joining the firm, Mr. Browne was a litigation associate at Latham & Watkins, where he had a wide range of experience in commercial litigation, including defending corporate officers and directors in securities class actions and derivative suits, and representing major corporate clients in state and federal court litigations and arbitrations. Mr. Browne was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

Mr. Browne was also a member of the team responsible for prosecuting *In re King Pharmaceuticals Litigation*, which recently settled for $38.25 million. Along with firm partners Max Berger, Sean Coffey and Sal Graziano, and associate Jeremy Robinson, Mr. Browne is also a member of the team prosecuting *In re Refco Securities Litigation*, currently pending in the Southern District of New York. With firm partner Erik Sandstedt and associate Matt Moehlman, Mr. Browne is prosecuting *In re SFBC Securities Litigation*, currently pending in the District of New Jersey.

ADMISSIONS: Admitted to bar, 2000, New York.

*Bernstein Litowitz Berger & Grossmann LLP*

## OF COUNSEL

**DOUGLAS M. MCKEIGE** received a B.A., *cum laude*, in Economics from Tufts University in 1979 and a J.D., *magna cum laude*, from Tulane University in 1986, where he was Order of the Coif and Articles Editor of the *Tulane Law Review*. A former partner with the Firm, Mr. McKeige now serves as Counsel. He has successfully prosecuted many significant federal securities class actions at the Firm, including *In re 3Com Securities Litigation*, which settled for $259 million, the largest settlement of a securities class action in the Ninth Circuit. A popular speaker and lecturer, he is a member of the National Association of Public Pension Attorneys, the Society of Pension Professionals, the National Association of State Treasurers, the National Council on Teacher Retirement and the National Conference on Public Employee Retirement Systems. Mr. McKeige is a frequent speaker at public pension fund conferences nationwide and has addressed the National Conference on Public Employees Retirement Systems annual meeting four years in a row on the role of institutional investors in securities litigation. For nearly a decade, Mr. McKeige ran the Firm's *Institutional Investor Forum*, an educational symposium conducted yearly for public pension fund managers, trustees and counsel.

ADMISSIONS: Admitted to bar, 1987, New York. 1987, U.S. District Court, Southern and Eastern Districts of New York.

**ELLIOTT J. WEISS**, one of America's most highly respected experts in securities and corporate law, joined the firm as Counsel in December 2005 after retiring from his post as the Charles E. Ares Professor of Law at the University of Arizona's Rogers College of Law.

Having spent nearly three decades of commitment to the development of young lawyers at several of the country's finest academic institutions, Professor Weiss has enjoyed a remarkable career teaching, writing and lecturing, having strongly influenced and directed public policy regarding our capital markets.

He has authored and co-authored several seminal texts and over 30 influential articles on securities litigation and corporate law throughout his career. Among his many published works, Professor Weiss was the lead co-author of "Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions" *[104 Yale L.J. 2053 (1995)]*, which proposed new rules governing the organization of securities class actions. Congress based the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 on that article and thus changed dramatically the dynamics of the securities class action litigation process.

Professor Weiss also was the first Executive Director of the Investor Responsibility Research Center, where he did groundbreaking work on institutional investors' responsibility for corporate governance issues, and has served as a member of the National Adjudicatory Council of NASD-Regulation and as a consultant to the United States' Securities and Exchange Commission.

A member, past and present, of numerous esteemed professional associations, including the American Law Institute, Professor Weiss has been a force for positive change in the legal, financial and business communities, and continues his long career defending the rights of investors and demanding responsible behavior from corporate management.

A graduate of Dartmouth College and Yale Law School, Professor Weiss resides in Tucson, Arizona and maintains an office at the Rogers College of Law.

ADMISSIONS: Admitted to bar, 1965, California (inactive). 1966, New York.

**G. ANTHONY GELDERMAN, III** served as Chief of Staff and General Counsel to the Treasurer of the State of Louisiana, (1992-1996) and prior to that served as General Counsel to the Louisiana Department of the Treasury. Mr. Gelderman also coordinated all legislative matters for the State Treasurer during his tenure with the Treasury Department. Earlier in Mr. Gelderman's legal career, he served as law clerk to U.S. District Judge Charles Schwartz, Jr., Eastern District of Louisiana (1986-1987).

Mr. Gelderman is a former adjunct professor of law at the Tulane Law School where he has taught a course in legislative process. He is a member of the Louisiana State (Chairman, Young Lawyers Continuing Legal Education Committee, 1990-1993) and American Bar Associations. In 1995, Mr. Gelderman was profiled by the American Bar Association in *Barrister* magazine as one of the 25 young lawyers in America making a difference in the legal profession.

Mr. Gelderman heads the firm's Louisiana office.

*Bernstein Litowitz Berger & Grossmann LLP*

ADMISSIONS: Admitted to bar, 1986, Louisiana. 1997, U.S. District Courts for the Eastern District and Middle District of Louisiana.

**WALLACE A. SHOWMAN**, Counsel to the Firm, received his B.A. from Queens College in 1985 and his J.D. from New York University School of Law in 1988. He has litigated dozens of successful class actions and derivative cases involving securities, corporate transactions, and consumer protection, including *In re Cendant Securities Litigation* (D. N.J.) and In re Telxon Corp. Securities Litigation (D. Ohio). He has also represented plaintiffs in several cases involving alleged fraud in private placement of securities and in NASD and NYSE securities arbitrations.

Mr. Showman is a member of the American Bar Association, the American Trial Lawyers Association, New York State Bar Association, New York County Lawyers Association, and the Association of the Bar of the City of New York.

ADMISSIONS: Admitted to bar, 1989, New York. 1989, U.S. District Court, Southern, Eastern and Northern Districts of New York. 1994, Fifth Circuit Court of Appeals. 1998, United States Supreme Court. 2003, Second Circuit Court of Appeals. 2003, U.S. District Court, District of Colorado. 2005, Tenth Circuit Court of Appeals.

**DAVID D. CONKLIN**, Counsel to the Firm, received his B.A. in Political Science, with distinction, from the University of Toronto in 1988 and his Common Law L.L.B/J.D., in 1991 from the University of Toronto Faculty of Law. While at the University of Toronto, Mr. Conklin placed second at the World University Debating Championships and won the Laskin National Moot Competition. He completed his L.L.M at Columbia University in 2005-2006, focusing on corporate finance, capital markets and corporate governance, and has been designated as a Harlan Fiske Stone Scholar.

Prior to joining the firm, Mr. Conklin was a Partner at Lerners LLP, a leading litigation firm in Canada. Mr. Conklin's practice involved a broad range of securities, corporate governance, professional negligence, fiduciary duty, and partnership/joint venture cases. He has worked within all levels of Canada's Court system and also has extensive experience with both mediations and arbitrations.

Mr. Conklin was a part-time lecturer at the Kellogg-Schulich Joint Executive MBA Program and Department of Executive Development Program at the Schulich School of Business at York University in Canada, where he taught corporate governance with an emphasis on director and officer liability. Mr. Conklin also taught trial advocacy to new lawyers in Ontario and to upper year students at the University of Toronto, Faculty of Law.

In addition to prosecuting securities matters for the firm's institutional clients, Mr. Conklin works within the New Matter Group at BLB&G, where he, along with a group of financial analysts and investigators, counsels clients on potential legal claims.

ADMISSIONS: Admitted to bar; The Law Society of Canada, 1993. New York, pending.


### SENIOR COUNSEL

**ROCHELLE FEDER HANSEN**, Senior Counsel to the firm, received her B.A. from Brooklyn College of the City University of New York in 1966 and her M.S. in 1976. She received her J.D., *magna cum laude*, from Benjamin N. Cardozo School of Law in 1979, where she was a member of the *Law Review*.

Ms. Hansen has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation*, *In re First Republic Securities Litigation*, and the *RJR Nabisco Litigation*. Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

ADMISSIONS: Admitted to bar, 1980, New York. 1980, U.S. District Courts for the Southern and Eastern Districts of New York. 1993, U.S. Court of Appeals, Fifth Circuit.

*Bernstein Litowitz Berger & Grossmann LLP*

## SPECIAL COUNSEL

**DOMINIC J. AULD** received his B.A. (Honours) in 1992 from Queen's University in Kingston, Ontario, Canada; and his J.D. in 1998 from the Northwestern School of Law at Lewis and Clark College in Portland, Oregon, where he received an academic scholarship, graduated on the Dean's list, and was a founding member of the nationally recognized law review, *Animal Law*.

Mr. Auld counsels public pension funds and other institutional investors regarding investment portfolio monitoring and the analysis of potential securities litigation claims. In connection with his public pension practice, Mr. Auld frequently addresses meetings of public pension trustees, administrators and attorneys concerning their fiduciary duties, particularly with respect to instances where portfolio assets are lost due to corporate fraud. He currently specializes in assisting the firm's clients outside of the U.S., especially those in Canada and Europe.

Before joining BLB&G, Mr. Auld worked on commercial litigation matters for Ross Dixon & Bell in both their San Diego and Washington D.C. offices.

ADMISSIONS: Admitted to bar, 1999, New York.

## ASSOCIATES

**JERALD BIEN-WILLNER** received his B.A., *cum laude*, from Claremont McKenna College in 1997 where he was Dean's List, a Claremont McKenna Distinguished Scholar, a recipient of the McKenna Scholar four-year merit scholarship and was recognized by the faculty as the outstanding Literature graduate in his class. Mr. Bien-Willner received his J.D. from the University of Arizona College of Law in 2002 where he was a member of the Moot Court Board, National Moot Court Team and awarded Best Oral Advocate, and a Snell and Wilmer Scholar receiving a full academic merit scholarship. Prior to joining the firm, Mr. Bien-Willner was in-house counsel for a real estate holding company where he advised on legal and business matters and prosecuted securities, tort, contract, real estate and insurance bad faith actions.

Mr. Bien-Willner is an active member of the team prosecuting the *Mutual Fund Investment Multi-District Litigation*, which includes the *In re Invesco*, *In re MFS* and *In re Pilgrim Baxter* actions. Mr. Bien-Willner is also a member of the team prosecuting *In re Retek, Inc. Securities Litigation*.

He is proficient in Spanish and practices out of the firm's California office.

ADMISSIONS: Admitted to bar, 2003, California, Arizona and the U.S. District Courts for the Southern and Central Districts of California.

**ALYSON BRUNS** received her B.A. in Journalism from New York University in 1994, and her J.D. from Cornell Law School in 2003. While at Cornell, she was managing editor of the *Cornell Journal of Law and Public Policy* and served as a staff writer for the *Cornell Law Tower*. As a Dean's List student, Ms. Bruns worked as a research assistant under Professor Stewart Schwab, who is currently the Dean of Cornell Law School.

Prior to joining the firm, Ms. Bruns was a litigation associate at Liddle & Robinson, L.L.P, a securities arbitration firm in New York. At Liddle & Robinson, Ms. Bruns worked on state and federal court cases, as well as NYSE and NASD arbitrations.

She is currently a member of the teams prosecuting *Patti, et al. v. Long Island Power Authority* ("LIPA"), *In re EVCI Securities Litigation*, and *In re HealthSouth Bondholder Litigation*, in which a partial settlement has been obtained for $445 million for the investor classes.

ADMISSIONS: Admitted to bar, 2004, New York. 2004, U.S. District Courts for the Southern and Eastern Districts of New York.

**JAI K. CHANDRASEKHAR** received his B.A., *summa cum laude*, from Yale University, where he was elected to Phi Beta Kappa, in 1987. He received his J.D. from Yale Law School, where he was a Book Review Editor of the *Yale Law Journal*, in 1997.

*Bernstein Litowitz Berger & Grossmann LLP*

Prior to joining the firm, Mr. Chandrasekhar was a Staff Attorney with the Division of Enforcement of the United States Securities and Exchange Commission, where he investigated securities law violations and coordinated investigations involving multiple SEC offices and other government agencies.

Before his tenure at the SEC, he was an Associate at Sullivan & Cromwell LLP, where he represented corporate issuers and underwriters in public and private offerings of stocks, bonds, and complex securities and advised corporations on periodic reporting under the Securities Exchange Act of 1934, compliance with the Sarbanes-Oxley Act of 2002, and other corporate and securities matters.

ADMISSIONS: Admitted to bar, 2001, New York. 2006, U.S. District Court, Southern and Eastern Districts of New York; U.S. Court of Appeals for the Third Circuit.

**JARED E. DANZIGER** received his B.A. in 1998 from the University of Pennsylvania and his J.D. in 2005 from Northwestern University School of Law. While in law school, Mr. Danziger successfully briefed and argued pro se *Danziger v. Luse*, in which the Ohio Supreme Court broadened the common law right of shareholder inspection in Ohio. The case received press from prominent industry publications including *Law Week*, *Securities Regulation* and *Law Report and American Banker*.

Prior to attending law school Mr. Danziger worked as an equity research analyst. He holds the Chartered Financial Analyst (CFA) designation and is a member of the New York Society of Securities Analysts. Additionally, he has appeared as a guest lecturer at NYU on the subject of the legal considerations in internal investigations and forensic accounting.

Mr. Danziger was a member of the team that successfully prosecuted the securities class action against *Federal Home Loan Mortgage Corporation* ("Freddie Mac"), securing a settlement of $410 million dollars on behalf of injured investors. He is currently a member of the teams prosecuting *In re Omnicom Group, Inc. Securities Litigation*; *In re Alstom SA Securities Litigation*; and *In re Isolagen, Inc. Securities Litigation*.

ADMISSIONS: Admitted to bar, 2006, New York.

**TIMOTHY A. DeLANGE** received his B.A. from the University of California, Riverside in 1994 and his J.D. from the University of San Diego School of Law in 1997. He was the 1994 recipient of the American Jurisprudence award in Contracts.

Mr. DeLange focuses on complex litigation in state and federal courts nationwide. Mr. DeLange is a member of the team prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth Circuit.

Mr. DeLange is currently prosecuting a number of other securities cases, including, along with firm partner Blair Nicholas, *In re Accredo Health, Inc. Securities Litigation*. Mr. DeLange also serves as the editor of the firm's quarterly publication, the Advocate.

Prior to joining the firm, Mr. DeLange practiced complex litigation at Brobeck, Phleger & Harrison LLP. He practices out of the firm's California office.

ADMISSIONS: Admitted to Bar, 1997, California. 1997, U.S. District Court for the Southern District of California. 2001, U.S. District Court for the Central District of California. 2002, U.S. District Court for the Northern and Eastern Districts of California.

**WENDY ERDLY** received her B.A., *magna cum laude*, from Lafayette College in 1999, where she was Phi Beta Kappa, and received her J.D. from Vanderbilt University Law School in 2002 where she was Dean's List, the Chief Justice of the Moot Court Board and the recipient of the award for Scholastic Excellence in Constitutional Law.

Prior to joining the firm, Ms. Erdly was a litigation associate with Dewey Ballantine where her practice included securities fraud, white collar criminal defense (including internal investigations and SEC investigations).

Together with BLB&G partners Sean Coffey, Steve Singer and associates Beata Gocyk-Farber and Avi Josefson, she is a member of the team prosecuting *In re Converium Holding AG Securities Litigation*.

ADMISSIONS: Admitted to bar, New York, (2003). U.S. District Court, Southern and Eastern Districts of New York, (2004).

**BENJAMIN GALDSTON** primarily focuses on complex securities fraud litigation and corporate governance matters. He practices in the firm's California office. Mr. Galdston participated in prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial

*Bernstein Litowitz Berger & Grossmann LLP*

settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth Circuit. Together with firm partners Max Berger, Sean Coffey, and David Stickney, Mr. Galdston recently represented institutional investors seeking to recover damages in *In re EMAC Securities Litigation*, a case that arose from a private offering of asset-backed securities. Among other cases, Mr. Galdston currently represents a certified class of investors in *In re Retek, Inc. Securities Litigation*, now pending in the U.S. District Court for the District of Minnesota and the Lead Plaintiff in *In re Stone Energy Corp. Securities litigation*, now pending in the U.S. District Court for the Western District of Louisiana.

Mr. Galdston received his law degree from the University of San Diego School of Law in 2000, where he earned the American Trial Lawyers' Association Book Award for Outstanding Scholarship in Appellate Advocacy, the American Jurisprudence Award for Property, and the Computer Assisted Learning Institute Award for Excellence in Legal Research. He was also an Executive Board Member of the Appellate Moot Court Board, competed in national Moot Court tournaments, and directed the University of San Diego School of Law National Criminal Procedure Moot Court Tournament. Following law school, Mr. Galdston represented investors in securities fraud actions at another national law firm.

Previously, Mr. Galdston was the sole proprietor of Litigation Support Systems, where he designed, constructed and maintained relational document databases for small law firms litigating document-intensive cases. He served as President of the Greater San Diego Barristers Club and is a member of the California Bar Association and the Federal Bar Association. He has published several articles concerning practice in the federal courts.

ADMISSIONS: Admitted to bar, 2000, California. U.S. District Courts for the Southern, Northern and Central Districts of California.

**PATRICIA S. GILLANE** received her B.A., *cum laude*, from Columbia University in 1985 and her J.D. from Brooklyn Law School in 1989, where she was an editor of the *Brooklyn Law Review*. Ms. Gillane is the author of "One Moment in Time: The Second Circuit Ponders Choreographic Photography as a Copyright Infringement: Horgan vs. MacMillan." She is a member of the American Bar Association and a former member of the Association of the Bar of the City of New York, where she served on the Professional Responsibility Committee.

Together with firm partners Max Berger and Edward Grossmann, Ms. Gillane successfully prosecuted *In re Bennett Funding Group Litigation* which arose out of the largest Ponzi scheme in history. After years of litigation, the matter settled for a total of over $165 million.

Most recently, she was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

ADMISSIONS: Admitted to bar, 1990, New York. 1990, U.S. District Courts, Southern and Eastern Districts of New York.

**BEATA GOCYK-FARBER** is involved in all areas of the firm's litigation practice, with particular emphasis on securities fraud actions, complex commercial litigation, and trial practice.

Most recently, Ms. Gocyk-Farber was a senior associate on the trial team that prosecuted *In re WorldCom, Inc. Securities Litigation*, resulting in a recovery for investors of over $6.15 billion -- the second largest securities fraud recovery in the history of the financial markets. She was also one of the senior lawyers leading the prosecution of *In re Williams Securities Litigation*, which resulted in $311 million in recoveries for the plaintiffs shortly before trial. This was one of the largest recoveries in a securities class action in which the corporate defendant did not restate its financial results. She is currently a senior member of the team prosecuting *In re HealthSouth Securities Litigation* and *In re Converium Securities Litigation*. Ms. Gocyk-Farber also has extensive experience in prosecuting executive compensation cases and is one of the senior lawyers prosecuting the federal derivative action against the individuals involved in the options backdating scandal at *United Health Group, Inc.*

Ms. Gocyk-Farber received her J.D., *summa cum laude*, from the Benjamin N. Cardozo School of Law in 1997, where she was a member of the *Cardozo Law Review,* the Order of the Coif, a Balkin Scholar and the recipient of the West Publishing Award for Academic Excellence. She authored and published "Patenting Medical Procedures: In Search of a Compromise Between Ethics and Economics" while at Cardozo.

Prior to joining BLB&G in 2001, Ms. Gocyk-Farber was an associate with Cleary Gottlieb Steen & Hamilton in New York, where she represented large financial institutions and sovereign governments in securities and merger and acquisitions transactions.

Ms. Gocyk-Farber is fluent in Polish and has working knowledge of Russian. She is a member of the International Law Section of the American Bar Association.

*Bernstein Litowitz Berger & Grossmann LLP*

ADMISSIONS: Admitted to bar, 1998, New York. 2002, U.S. District Court for the Southern District of New York.

**HANNAH E. GREENWALD** received her B.A, *cum laude*, from Cornell University in 1995 and received her J.D. from the Dickinson School of Law of The Pennsylvania State University, where she was a member of the Woolsack Honor Society, in 1998. While at Dickinson, Ms. Greenwald was a Comments Editor of the *Dickinson Law Review*. She was also the recipient of the D. Arthur Magaziner Human Services Award, awarded to the senior who has demonstrated good character, sound academic performance, high ethical standards, fidelity to the highest goals of the profession and commitment to selfless human service.

Before joining BLB&G, Ms. Greenwald was a prosecutor in the Insurance and Unemployment Fraud Division of the Massachusetts Attorney General's office. Prior to that, she was an Assistant District Attorney in the Middlesex County (Massachusetts) District Attorney's office from 1998 to 2000.

Ms. Greenwald's practice at the firm focuses on securities fraud litigation. Ms. Greenwald was part of the team that successfully prosecuted the securities class action against the *Federal Home Loan Mortgage Corporation* ("Freddie Mac") resulting in a settlement of $410 million. She was also a member of the team that successfully prosecuted the *In re OM Group, Inc. Securities Litigation* resulting in a settlement of $92.4 million.

Ms. Greenwald is currently prosecuting a number of other securities cases, including *In re The Mills Corporation Securities Litigation* and *In re Delphi Corporation Securities Litigation*. Ms. Greenwald is also working on cases relating to stock option backdating.

ADMISSIONS: Admitted to bar, Massachusetts (1998) and New York (2002).

**LAURA H. GUNDERSHEIM** received her B.A, *magna cum laude,* from the University of California, Los Angeles in 2001, where she was Phi Beta Kappa, and received her J.D. from Harvard Law School in 2004. While at Harvard, Ms. Gundersheim was a founding member and the Vice-President of the Harvard Advocates for Reproductive Choices and an executive committee member of the *Women's Law Journal.* While in law school, she worked at the Lawyers' Committee for Civil Rights, Health Law Advocates, The Hale & Dorr Legal Services Center and the Tenant Advocacy Project.

Since graduating from law school, Ms. Gundersheim's practice has included securities fraud and shareholder derivative litigation on behalf of institutional investor clients, as well as consumer fraud, copyright infringement, and employment discrimination litigation. She was an integral part of the team that prosecuted the landmark *In Re Walt Disney Derivative Litigation* which redefined the fiduciary duties of directors in public companies.

She is currently a member of the teams prosecuting *In re The Mills Corporation Securities Litigation, In re Comverse Technology, Inc. Derivative Litigation* and *Breese et al v. CooperSurgical, Inc.*

Ms. Gundersheim is a member of the New York Bar Association's Consumer Affairs Committee and Trial Lawyers for Public Justice.

ADMISSIONS: Admitted to bar, 2005, New York. 2005, United States District Courts for the Southern and Eastern Districts of New York.

**DAVID R. HASSEL** received his B.A., *magna cum laude*, in 1995 from St. Olaf College, Northfield, Minnesota in Political Thought, and a J.D. with High Distinction/Special Honors from the University of Iowa in 1999, where he was a member of the *Iowa Law Review* and Associate Editor of the *Journal of Transnational Law & Contemporary Problems*.

Prior to joining the firm, Mr. Hassel was a litigation associate at Dewey Ballantine, LLP in its New York office, representing clients in private securities litigation, informal inquiries from the SEC and SROs and general corporate governance issues as well as general commercial litigation.

Together with firm partners Max Berger, Sean Coffey, Steven Singer and Chad Johnson, Mr. Hassel was a member of the team responsible for prosecuting the *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

ADMISSIONS: Admitted to bar, Massachusetts, 2000. New York, 2002. United States District Court, Southern District of New York, 2004.

*Bernstein Litowitz Berger & Grossmann LLP*

**AVI JOSEFSON** received his B.A., *cum laude*, from Brandeis University in 1997 and his J.D., *Dean's List*, from Northwestern University in 2000. At Northwestern, Mr. Josefson represented juvenile and adult clients in various courts and was awarded the Justice Stevens Public Interest Fellowship (1999) and the Public Interest Law Initiative Fellowship (2000).

He is a co-author of several articles including "Top 10 Considerations When Seeking Insurance Recovery for E-Commerce and Internet Claims," which he wrote for the ABA, as well as "Political and Currency Risk Insurance" and "It's Not a Small World After All: Meeting the Challenge of Global Risks" which he wrote for the *Manufacturers Alliance Risk Management Councils I & II*.

Mr. Josefson was a member of the team responsible for the successful prosecution of the *Columbia/HCA Healthcare Corporation Derivative Litigation*, arising from the largest healthcare fraud in history.

ADMISSIONS: Admitted to bar, 2000, Illinois. 2003, New York.

**ERIC T. KANEFSKY** received his B.A. in 1999 from The George Washington University and his J.D., *cum laude*, from Temple University in 2002, where he was Associate Research Editor of the *Temple Law Review*. While at Temple, Eric served as a student law clerk to The Honorable Bruce W. Kauffman, United States District Judge for the Eastern District of Pennsylvania and The Honorable James R. Melinson, Chief Magistrate Judge for the Eastern District of Pennsylvania.

After law school, Mr. Kanefsky was a litigation associate in the White Collar and Government Enforcement Group at Ballard Spahr Andrews & Ingersoll LLP in Philadelphia. Along with firm partner Sean Coffey, he is currently a member of the team prosecuting *In re HealthSouth Corporation Securities Litigation*.

ADMISSIONS: Admitted to bar, 2002, Pennsylvania. 2002, New Jersey. 2003, U.S. District Court, Eastern District of Pennsylvania. 2003, U.S. District Court, District of New Jersey. 2005, New York. 2005, U.S. District Court, Southern and Eastern District of New York.

**MARK LEBOVITCH** received his B.A., *cum laude*, in 1996 from Binghamton University and his J.D., *cum laude*, from New York University School of Law in 1999 where he was the Staff Editor of the *Annual Survey of American Law*.

Following law school, Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, where he participated in numerous trials and hearings involving hostile takeover and similar fundamental corporate transaction-based litigation, derivative suits, appraisal actions and other shareholder claims relating to allegations that corporate officers and directors breached their fiduciary, contractual and/or statutory duties.

Prior to joining the firm, Mr. Lebovitch was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he litigated several hostile corporate takeovers and represented clients in a variety of corporate governance and commercial matters. He has worked on corporate disputes that went to trial before the Delaware Chancery Court, the New York Supreme Court and before a three member private arbitration panel. He also represented clients in several significant securities fraud cases.

Mr. Lebovitch is the co-author of "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions" (2001 *Columbia Business Law Review* 1). The article advocated for greater protection for shareholders in connection with so-called "deal protections," which have since been effectuated by a recent opinion of the Delaware Supreme Court. He is also the co-author of "Practical Refinement" (*The Daily Deal*, January 2002), which discussed evolving developments in the law of directors' fiduciary duties. He is a member of the American Bar Association, its Section on Business Law and Committee on Corporate Governance, and the Association of the Bar of the City of New York.

Among other matters, Mr. Lebovitch is currently a member of the teams prosecuting *In re Suprema Specialties, Inc. Securities Litigation*, *In re Williams Securities Litigation*, *In re Omnicom Group, Inc. Securities Litigation*, *Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, *In re Cablevision Shareholders Litigation*, and *Louisiana Municipal Employees' Retirement System, et al. v. Edwin M. Crawford. et al.* (representing Caremark shareholders in a fiduciary duty action challenging the Caremark proposed merger with CVS and the board of directors' rejection of a hostile takeover offer by Express Scripts). He regularly works with the new matter team to investigate and assess potential new litigations, including lawsuits challenging officer and director conduct in the corporate transactional context.

ADMISSIONS: Admitted to bar, 2000, New York. 2001, U. S. District Courts for the Southern and Eastern Districts of New York.

*Bernstein Litowitz Berger & Grossmann LLP*

**NOAM MANDEL** received his B.S.F.S. from Georgetown University in 1998 and his J.D., *cum laude*, from Boston University School of Law in 2002. Mr. Mandel served as an Editor for the *Boston University Law Review* and won awards in civil procedure, evidence, and international law. While in law school, Mr. Mandel also participated in an exchange program with the University of Leiden, The Netherlands, where he concentrated his studies on international and comparative law.

Prior to joining BLB&G, Mr. Mandel was a litigation associate at Simpson Thacher & Bartlett LLP, where his practice focused on securities, shareholder and ERISA fiduciary matters.

ADMISSIONS: Admitted to bar, 2004, New York.

**KATHERINE M. McCRACKEN** received her B.A., *cum laude*, from Baylor University in 2002 and her J.D., *cum laude*, from Georgetown University in 2006, where she was a Dean's Scholar. While at Georgetown, Ms. McCracken served as an Articles Editor for *The Georgetown Journal of Gender and the Law*.

Ms. McCracken's practice focuses on securities fraud and class action litigation. She is currently a member of the teams prosecuting *In re Biovail Corporation Securities Litigation*, pending in the Southern District of New York, and *In re Comverse Technology, Inc. Derivative Shareholder Litigation*, the stock options backdating case currently pending in the Eastern District of New York.

ADMISSIONS: Admission pending, New York, 2006.

**NIKI L. MENDOZA** joined the San Diego office in 2002. Since joining the firm, Ms. Mendoza has helped obtain hundreds of millions of dollars worth of recoveries on behalf of defrauded investors, including her involvement in the *In re El Paso Corp. Securities Litigation*, *In re Symbol Technologies Corp. Securities Litigation*, and *In re Gemstar-TV Guide International, Inc. Securities Litigation*, among others.

In 2005, Ms. Mendoza assisted in completing a full jury trial and achieving a rare securities fraud verdict against the company's CEO in *In re Clarent Corporations Securities Litigation*. She also recently conducted extensive fact and expert discovery, full motion practice and completed substantial trial preparation in *In re Electronic Data Systems, Inc. Securities Litigation*, resulting in settlement just prior to trial for $137.5 million – one of the larger settlements in non-restatement cases since the passage of the PSLRA.

Ms. Mendoza co-authored various articles which have been cited in federal court opinions (including *Dura Pharm., Inc. v. Broudo-The Least of All Evils*, 1505 PLI/Corp. 272, 274 {Sept.2005} and *Dura-Bull: Myths of Loss Causation*, 1557 PLI/Corp. 339). In addition to her practice, she has been selected as the incoming Co-Chair of the Steering Committee of the San Diego County Bar Association's Children At Risk committee, a committee that works with schools and children's organizations and coordinates literacy and enrichment programs that rely on attorney volunteers.

Ms. Mendoza received her B.A. from the University of Oregon in 1994. Ms. Mendoza received her J.D. from the University of Oregon School of Law in 1997 where she was a member of the Order of the Coif and a Managing Editor of the *Oregon Law Review*, for which she wrote "Rooney v. Kulongoski, Limiting the Principle of Separation of Powers?" She served as judicial law clerk to the Honorable Chief Judge Michael R. Hogan of the United States District Court for the District of Oregon from 1998 to 2001 where she received the Distinguished Service Recognition in September 2001.

Before joining BLB&G, Ms. Mendoza represented both plaintiffs and defendants in commercial and employment litigation, practicing in both Hawaii and California. Ms. Mendoza is a member of the State Bar of Hawaii, the State Bar of California, and the Federal Bar Committee of the San Diego County Bar Association. She practices out of the firm's California Office.

ADMISSIONS: Admitted to bar, California, 2001. Hawaii, 1997.

**BRETT M. MIDDLETON** primarily focuses in the areas of securities fraud and auditor liability. He has significant trial experience, having worked with firm partner Blair Nicholas in successfully prosecuting *In re Clarent Corp. Securities Litigation*, which resulted in a jury verdict in favor of plaintiffs and against the founder and former CEO of Clarent Corp.

Most recently, Mr. Middleton was on the litigation team representing the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board in *In re Williams Securities Litigation*, which resulted in a $311 million cash settlement against all defendants. The settlement was one of the largest in a securities class action case without a restatement by the defendant company. As part of this action, the team engaged in a massive discovery effort which included taking more than 150 depositions and reviewing in excess of 18 million pages of

*Bernstein Litowitz Berger & Grossmann LLP*

documents. Mr. Middleton was responsible for the prosecution of the case against Ernst & Young for its 2001 audit of Williams' Energy Marketing & Trading subsidiary and was instrumental in obtaining a settlement from Ernst & Young in the amount of $21 million.

Among other matters, Mr. Middleton is working with firm partner David Stickney on the *In re Dura Pharmaceuticals, Inc. Securities Litigation* matter. This securities fraud class action, venued in the United States District Court for the Southern District of California, is brought on behalf of purchasers of Dura Pharmaceuticals securities between April 15, 1997 through February 24, 1998.

Mr. Middleton is currently involved in the firm's prosecution of the federal derivative action against the individuals involved in the options backdating scandal at *Apollo Group, Inc.* which is the parent company of the University of Phoenix. That case is pending in the United States District Court for the District of Arizona. In connection with that lawsuit, BLB&G represents the Louisiana Municipal Police Employees Retirement System.

He is also assisting in the firm's representation of Amalgamated Bank as lead plaintiff against certain officers and directors of *Activision, Inc.* for their participation in the backdating of stock options. This action is currently being prosecuted in the Superior Court for the State of California, County of Los Angeles.

Mr. Middleton graduated from the University of California, Los Angeles in 1993 and received his J.D. from the University of San Diego School of Law in 1998. He is an active member of the Federal Bar Association and the Association of Business Trial Lawyers of San Diego. Mr. Middleton practices out of the firm's California office.

ADMISSIONS: Admitted to the State Bar of California, 1998; U.S. District Court for the Central District of California, 1998; U.S. District Court for the Southern District of California, 2002; and U.S. District Court for the Northern District of California, 2005.

**MATTHEW MOEHLMAN** received his A.B. in English and American Literature and Language from Harvard College in 1992, where he was an editor of *The Harvard Lampoon* magazine and *The Harvard Crimson* newspaper. He received his J.D. from the University of Virginia School of Law in 2003.

Prior to joining BLB&G, Mr. Moehlman worked as an associate at Strasburger & Price, LLP in Texas, and has experience in commercial litigation.

ADMISSIONS: Admitted to bar, Texas, 2004. New York, 2005.

**MARION C. PASSMORE** received her B.A. from the University of Southern California in 2000, and her J.D. and M.B.A from the University of San Diego in 2003 and 2004, respectively. While at the University of San Diego, Ms. Passmore was a member of the Beta Gamma Sigma honor society.

Ms. Passmore prosecutes securities litigation on behalf of the firm's institutional investor clients and is currently a member of the team handling the *In re Stone Energy Corporation Securities Litigation*. She practices out of the firm's California office.

ADMISSIONS: Admitted to bar, 2003, California. 2003, U.S. District Court for the Southern District of California.

**JEREMY P. ROBINSON** received his LL.B. from Queen's University, Faculty of Law in Kingston, Ontario, Canada in 1998, where he graduated within the top 10% of his class and received numerous prizes, including honors in the Niagara International Moot Court Competition. In 2000, Mr. Robinson was awarded a Harold G. Fox scholarship and spent a year in London, England working with barristers and judges of the Middle Temple, Inns of Court. In 2005, he received his Master of Laws degree from Columbia University School of Law, where he was a Harlan Fiske Stone Scholar.

Prior to joining BLB&G, Mr. Robinson worked as a litigation associate at Torys LLP in Toronto, Canada, during which time he co-authored numerous publications, including one of the first books published in Canada regarding new private sector privacy litigation. Mr. Robinson has extensive experience in securities and general commercial litigation.

Along with firm partners Max Berger, Sean Coffey, Sal Graziano and John Browne, Mr. Robinson is a member of the team prosecuting *In re Refco, Inc. Securities Litigation*, which is currently pending in the Southern District of New York. Mr. Robinson is also a member of the teams responsible for prosecuting *In re Isolagen, Inc. Securities Litigation* and *In re R&G Financial Corporation Securities Litigation*.

ADMISSIONS: Admitted to bar, Ontario, Canada, 2000. New York, Pending.

*Bernstein Litowitz Berger & Grossmann LLP*

**ADAM H. WIERZBOWSKI** received his B.A., *magna cum laude*, from Dartmouth College in 2000, and earned his J.D., with honors, from The George Washington University Law School in 2003. While at George Washington Law, Mr. Wierzbowski served as Notes Editor for *The George Washington International Law Review* and was a member of the Moot Court Board.

Mr. Wierzbowski's practice focuses on securities fraud litigation. He is currently a member of the teams prosecuting the *UnitedHealth Group, Inc. Shareholder Derivative Litigation* and the *Mutual Fund Investment Multi-District Litigation*, which includes the actions *In re Invesco, In re MFS* and *In re Pilgrim Baxter*.

ADMISSIONS: Admitted to bar, 2004, New York. 2005, United States District Courts for the Southern and Eastern Districts of New York.

**DEVAL R. KARINA ZAVERI** received her B.S., *magna cum laude*, in 1994 from Georgia Tech and her J.D., *cum laude*, from University of Georgia School of Law in 1997 where she was Articles Editor for the *Journal of Intellectual Property Law*.

Following law school, Ms. Zaveri was a Lieutenant in the U.S. Navy, Judge Advocate General's Corps where she was chosen as lead counsel for a high-profile felony jury trial. During her tenure with the U.S. Navy, she was ranked as the top defense counsel in the Navy's second largest criminal defense unit.

Prior to joining the firm, Ms. Zaveri was a litigation associate at Cooley Godward LLP where she practiced commercial and securities litigation, and Morrison & Foerster LLP where she practiced commercial, criminal, and intellectual property litigation.

Ms. Zaveri is a director of the San Diego Museum of Art's Committee for the Arts of the Indian Subcontinent, and a former director of the South Asian Bar Association of San Diego. Additionally, she participates in the San Diego County Bar Association Volunteer Lawyer Program and is a member of the Federal Bar Association, the Lawyers' Club, and the J. Clifford Wallace Inns of Court.

ADMISSIONS: Admitted to bar, 1997, Georgia. 2001, California.

# EXHIBIT G

## BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO

# THE FIRM

The law firm of Berman DeValerio Pease Tabacco Burt & Pucillo prosecutes class actions nationwide on behalf of victims of securities and antitrust law violations. Founded in 1982, Berman DeValerio has 36 attorneys in offices in Boston, San Francisco, and West Palm Beach. The firm holds leadership positions in dozens of securities and antitrust actions around the country.

The attorneys at Berman DeValerio have prosecuted hundreds of class actions on behalf of defrauded individuals and institutions, recovering billions of dollars overall for clients. In addition to the financial recoveries, the firm has achieved significant changes in corporate governance.

The firm acts as monitoring, evaluation, and/or litigation counsel for some 60 public and Taft-Hartley pension funds, including three of the four largest pension funds in the nation and more than a quarter of all U.S. public funds with more than $5 billion in assets under management.

# RESULTS

## Securities Settlements

The firm has negotiated substantial recoveries and corporate governance changes for its clients. The following is a selection of significant results in securities litigation:

In Re: WorldCom, Inc. Sec. Litig., 02cv3288 (S.D.N.Y.). As counsel to court-appointed bondholder representatives the County of Fresno, Calif., and the Fresno County Employees' Retirement Association, Berman DeValerio helped a team of lawyers representing the lead plaintiff, the New York State Common Retirement Fund, obtain settlements worth more than $6.13 billion as of July 26, 2005.

In Re: Bristol-Myers Squibb Sec. Litig. (Bristol-Myers 2), 02cv2251 (S.D.N.Y.). Berman DeValerio represented the Fresno County Employees' Retirement Association and the Louisiana State Employees' Retirement System as co-lead plaintiffs, negotiating a cash settlement of $300 million in July 2004. The settlement was the largest by a drug company in a U.S. securities fraud case.

In Re: El Paso Sec. Litig., H-02-2717 (S.D. Tex.). Representing the Oklahoma Firefighters Pension and Retirement System as co-lead plaintiff, Berman DeValerio helped negotiate a memorandum of understanding to settle claims against the defendants for $285 million, including $12 million from auditors PricewaterhouseCoopers. The

proposed settlement was announced on Aug. 2, 2006, and has received preliminary approval from the court.

In Re: Digital Lightwave Sec. Litig., 98-152cvT-24C (M.D. Fla.). The Boston office acted as co-lead counsel and the Florida office acted as liaison counsel in negotiating a settlement that included changing company management and strengthening the company's internal financial controls. The class received 1.8 million shares of freely tradable common stock that traded at just below $4 per share when the court approved the settlement. At the time the shares were distributed to the members of the class, the stock traded at approximately $100 per share and class members received more than 200% of their losses after the payment of attorneys' fees and expenses. The total value of the settlement, at the time of distribution to the class, was almost $200 million.

In Re: Bristol-Myers Squibb Sec. Litig. (Bristol-Myers 1), 00cv1990, (D.N.J). The firm negotiated a $185 million partial settlement with Bristol-Myers and Charles A. Heimbold, Jr., the company's former chairman and chief executive officer. The company also agreed to implement corporate governance reforms. The settlement agreement received final court approval on May 11, 2006.

In Re: Symbol Technologies, Inc. Sec. Litig., 2:02cv01383 (E.D.N.Y.). Berman DeValerio represented the Municipal Police Employees' Retirement System of Louisiana as co-lead plaintiff, obtaining a $139 million partial settlement in June 2004. Subsequently, Symbol's former auditor, Deloitte & Touche LLP, agreed to pay $24 million. The settlement was approved by the court on Sept. 12, 2006. Lead plaintiffs continue to prosecute claims against individual defendants.

In Re: Lernout & Hauspie Products, N.V., Sec. Litig., 1:00cv11589 (D. Mass.). As co-lead counsel, Berman DeValerio negotiated the third largest settlement ever paid by accounting firms in a securities class action – a $115 million agreement with the U.S. and Belgian affiliates of KPMG International to settle claims of accounting malpractice. The case stemmed from KPMG's work for Lernout & Hauspie Speech Products, a software company driven into bankruptcy by a fraud scandal. The firm has reached additional partial settlements worth $5.5 million. The case is continuing against other defendants, including Lernout & Hauspie's former top officers, who are currently facing criminal charges in Belgium.

In Re: Prison Realty Sec. Litig., 3:99cv0452 (M.D. Tenn.), (In Re: Old CCA Sec. Litig., 3:99cv0458). The firm represented the former shareholders of Corrections Corporation of America, which merged with another company to form Prison Realty Trust, Inc. The action charged that the registration statement issued in connection with the merger contained untrue statements. The firm countered arguments that the class' claims of securities fraud were released in prior litigation involving the merger and overcame motions to dismiss. It negotiated a global settlement of approximately $120 million in cash and stock for this case and other related litigation.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

<u>Oracle Cases, Coordination Proceeding, Special Title (Rule 1550(b))</u> No. 4180 (Cal. Sup. Ct., SM Cty.). In this coordinated derivative action, Oracle Corporation shareholders alleged that the company's CEO, Lawrence J. Ellison, profited from illegal insider trading. Acting as co-lead counsel, the firm reached a settlement under which Mr. Ellison would personally make a charitable donation of $100 million over five years in Oracle's name to an institution or charity approved by the company and pay $22 million in attorneys' fees and expenses associated with the prosecution of the case. This innovative agreement, approved by a judge in December 2005, benefited Oracle through increased goodwill and brand recognition, while minimizing issues that would have been raised by a payment from Mr. Ellison to the company, of which he was a large shareholder. In addition, the lawsuit resulted in important changes to Oracle's insider trading policies that decrease the chances that an insider will trade in possession of material, non-public information. Under the agreement, Mr. Ellison denied any alleged wrongdoing and the parties acknowledged that the settlement did not constitute an admission of wrongdoing.

<u>In Re: Philip Services Corp. Sec. Litig.</u>, 98cv0835 (S.D.N.Y). As co-lead counsel, Berman DeValerio negotiated a total $79.5 million settlement with the bankrupt company's former auditors, top officers, directors and underwriters. The case alleges that Philip Services and its top officers and directors made false and misleading statements regarding the company's publicly reported revenues, earnings, assets and liabilities. The settlement requires final court approval.

<u>In Re: Reliant Energy, Inc. Sec. Litig.</u>, 02cv1810 (S.D. Tex.). As lead counsel representing the Municipal Police Employees' Retirement System of Louisiana, the firm negotiated a $75 million cash settlement from the company and Deloitte & Touche LLP, an underwriter of its 2001 initial stock offering. The settlement agreement was announced in July 2005 and the Court granted final approval on Jan. 7, 2006.

<u>Ehrenreich v. Witter</u>, 95cv6637 (S.D. Fla.). The Florida office acted as co-lead counsel in a case involving Sensormatic Electronics Corp., which resulted in a settlement of $53.5 million approved in 1998. It was one of the largest class action settlements in the state of Florida.

<u>In Re: Thomas & Betts Sec. Litig.</u>, 2:00cv2127 (W.D. Tenn.). The firm served as co-lead counsel in this class action, which settled for more than $51 million. Plaintiffs had accused the company and other defendants of issuing false and misleading financial statements for 1996, 1997, 1998, 1999 and the first two quarters of 2000.

<u>In Re: Enterasys Networks, Inc. Sec. Litig.</u>, C-02-071-M (D.N.H.). Berman DeValerio acted as sole lead counsel in a case against Enterasys Networks, Inc., in which the Los Angeles County Employees Retirement Association was lead plaintiff. The company settled in October 2003 for $17 million in cash, stock valued at $33 million and major corporate governance improvements that opened the computer networking company to greater public scrutiny. Changes included requiring the company to back a proposal to eliminate its staggered board of directors, allowing certain large shareholders to propose

3

candidates to the board and expanding the company's annual proxy disclosures. The settlement received court approval in December 2003.

Giarraputo v. UNUMProvident Corp., 2:99cv00301 (D. Me.). A member of the executive committee representing plaintiffs, Berman DeValerio secured a $45 million settlement in a lawsuit stemming from the 1999 merger that created UNUMProvident. Shareholders of both predecessor companies accused the insurer of misleading the public about its business condition before the merger. The settlement received final approval in June 2002.

In Re: UCAR International, Inc. Sec. Litig., 98cv0600 (D. Conn.). The firm represented the Florida State Board of Administration as the lead plaintiff in a securities claim arising from an accounting restatement. The case settled for $40 million cash and the requirement that UCAR appoint an independent director to its board of directors. The settlement was approved in 2000.

In Re: SmartForce PLC d/b/a SkillSoft Sec. Litig., 02cv544 (D.N.H.). Representing the Teachers' Retirement System of Louisiana as co-lead plaintiff, Berman DeValerio negotiated a $30.5 million partial settlement with SkillSoft. Subsequently, the firm also negotiated an $8 million cash settlement with Ernst & Young Chartered Accountants and Ernst & Young LLP, SkillSoft's auditors at the time. The settlements received final approval in September 2004 and November 2005, respectively.

In Re: Centennial Technologies Sec. Litig., 97cv10304 (D. Mass.). The firm served as sole lead counsel a class action involving a massive accounting scandal that shot down the company's high-flying stock. The Boston office negotiated a settlement that permitted a turnaround of the company and provided a substantial recovery for class members. The firm negotiated changes in corporate practice, including a strengthening of internal financial controls and obtained 37% of the company's stock for the class. The firm also recovered $20 million from Coopers & Lybrand, Centennial's auditor at the time. In addition, the firm recovered $2.1 million from defendants Jay Alix & Associates and Lawrence J. Ramaekers for a total recovery of more than $35 million for the class.

In Re: Avant, Sec. Litig., 96cv20132 (N.D. Cal.). Avant!, a software company, was charged with securities fraud in connection with its alleged theft of a competitor's software code, which Avant! incorporated into its flagship software product. Serving as lead counsel, the firm recovered $35 million for the class. The recovery resulted in each eligible class claimant receiving almost 50% of losses net of attorneys' fees and expenses.

In Re: Sykes Enterprises, Inc. Sec. Litig., 8:00cv212-T-26F (M.D. Fla.). The firm represented the Florida State Board of Administration as co-lead plaintiff. Sykes Enterprises was accused of using improper means to match the company's earnings with Wall Street's expectations. The firm negotiated a $30 million settlement, which received final approval in March 2003.

4

In Re: Valence Sec. Litig., 95cv20459 (N.D. Cal.). The California office served as co-lead counsel for the class, litigating against a Silicon Valley-based company that overstated performance and development of an allegedly revolutionary battery technology. Following the Ninth Circuit's reversal of the District Court's granting summary judgment in defendants' favor, the case settled for $30 million in Valence common stock.

In Re: Sybase II, Sec. Litig., 98cv0252-CAL (N.D. Cal.). Sybase was charged with inflating its quarterly financial results by improperly recognizing revenue at its wholly owned subsidiary in Japan. Acting as co-lead counsel, attorneys in the California office obtained a $28.5 million settlement.

In Re: Critical Path, Inc. Sec. Litig., 01cv0551 (N.D. Ca.). The firm negotiated a $17.5 million recovery to settle claims of accounting improprieties at a California software development company. The firm, representing the Florida State Board of Administration, was appointed sole lead counsel in August 2001. Allegations of serious fraud arose shortly after the collapse of Critical Path's stock price and certain former officers were indicted for stock fraud. The difficulties facing the lead plaintiff related to marshalling all available resources to secure a recovery for the class as Critical Path teetered on the edge of bankruptcy. Following negotiations, the case settled for $17.5 million. The settlement was approved in June 2002.

Hallet v. Li & Fung, Ltd., et al., 95cv08917 (S.D.N.Y.). Cyrk Inc. was charged with misrepresenting its financial results and failing to disclose that its largest customer was ending its relationship with the company. In 1998, the Boston office successfully recovered more than $13 million for defrauded investors.

In Re: Warnaco Group, Inc. Sec. Litig., 00cv6266 (S.D.N.Y.). Representing the Fresno County Employees' Retirement Association as co-lead plaintiff, the firm negotiated a $12.85 million settlement against several current and former top officers of the company.

Gelfer v. Pegasystems, Inc., et al., 98cv12527 (D. Mass.). As co-lead counsel, the Boston office negotiated a settlement valued at $12.5 million, $4.5 million in cash and $7.5 million in shares of the company's stock or cash, at the company's option.

Sand Point Partners, L.P. v. Pediatrix Medical Group, Inc., 99cv6181 (S.D. Fla.). Berman DeValerio represented the Florida State Board of Administration, which was appointed co-lead plaintiff along with several other public pension funds. The complaint accused Pediatrix of Medicaid billing fraud, claiming that the company illegally increased revenue and profit margins by improperly coding treatment rendered. The case settled for $12 million on the eve of trial in 2002, after completion of discovery. As co-lead counsel, the firm prosecuted the case through pre-trial proceedings.

5

In Re: Molten Metal Technology Inc. Sec. Litig., 1:97cv10325 (D. Mass.) and Axler v. Scientific Ecology Group, Inc., et al., 1:98cv10161 (D. Mass.). As co-lead counsel, the Boston office played a key role in settling the actions after Molten Metal and several affiliates filed a petition for bankruptcy reorganization in Massachusetts. The individual defendants and the insurance carriers in Molten Metal agreed to settle for $11.91 million. After the bankruptcy, a trustee objected to the use of insurance proceeds for the settlement. The parties agreed to pay the trustee $1.325 million of the Molten Metal settlement. The parties also agreed to settle claims against Scientific Ecology Group for $1.25 million, giving Molten Metal's investors $11.835 million.

In Re: CHS Electronics, Inc. Sec. Litig., 99-8186-CIV (S.D. Fla.). The firm helped obtain an $11.5 million settlement for co-lead plaintiff Warburg, Dillon, Read, LLC (now UBS Warburg).

In Re: Summit Technology Sec. Litig., 96cv11589 (D. Mass.). The Boston office, as co-lead counsel, negotiated a settlement consisting of $10 million for the benefit of the class. The action was intensely litigated for four years, resulting in motion practice on the adequacy of the complaint and the issue of class certification, the review and analysis of over a million pages of documents produced by the defendants and 40 third-party witnesses, the depositions of 40 witnesses, the exchange of nine expert reports and the filing of and responding to nine motions for summary judgment.

In Re: Exide Corp. Sec. Litig., 98cv60061 (E.D. Mich.). Exide was charged with having altered its inventory accounting system to artificially inflate profits by reselling used, outdated, or unsuitable batteries as new ones. The Boston office, as co-lead counsel for the class, recovered more than $10 million in cash for class members.

In Re: Fidelity/Micron Sec. Litig., 95cv12676 (D. Mass.). The firm recovered $10 million in cash for Micron investors after a Fidelity Fund manager touted Micron while secretly selling the stock.

In Re: Interspeed, Inc. Sec. Litig., 00cv12090-EFH (D. Mass.). The Boston office served as co-lead counsel and negotiated a $7.5 million settlement on behalf of the class. The settlement was reached in an early stage of the proceedings largely as a result of the financial condition of Interspeed and the need to salvage a recovery from its available assets and insurance.

**Antitrust Settlements**

Over the past two decades, Berman DeValerio has held leadership roles in scores of complex antitrust cases, negotiating substantial settlements for its clients. These include:

In Re: Foreign Currency Conversion Fee Antitrust Litig. (MDL 1409) (S.D.N.Y.). The West Palm Beach office, as head of discovery against defendant Citigroup Inc., played a key role in reaching a proposed $336 million settlement. The agreement settles claims

that the defendants, which include the VISA, MasterCard and Diners Club networks and other leading bank members of the VISA and MasterCard networks, violated federal and state antitrust laws in connection with fees charged to U.S. cardholders for transactions effected in foreign currencies. The proposed settlement is subject to final court approval.

<u>Sullivan et al. v. DB Investments, Inc. et al.</u>, 04cv04098 (D.N.J.). Representing a group of diamond resellers, Berman DeValerio reached a preliminary settlement of $295 million on March 31, 2006, with De Beers in the case. De Beers also agreed to adhere to a broad federal antitrust injunction as part of the class action settlement. The proposed settlement requires court approval.

<u>In Re: DRAM Antitrust Litig.</u>, M:02cv01486 (N.D. Cal). As liaison counsel, the California office negotiated a partial settlement with three of the world's leading manufacturers of Dynamic Random Access Memory chips. Defendants Infineon Technologies, Samsung Semiconductor and Hynix Semiconductor agreed to settle plaintiffs' claims for a total of $160.75 million. The court granted final approval of the settlements in November 2006.

<u>In Re: Sorbates Direct Purchaser Antitrust Litig.</u>, C 98-4886 CAL (N.D. Cal.). The California office served as lead counsel, alleging that six manufacturers of Sorbates, a food preservative, violated antitrust laws through participation in a worldwide conspiracy to fix prices and allocations to customers in the United States. The firm negotiated a partial settlement of $82 million with four of the defendants in 2000. Following intensive pretrial litigation, the firm achieved a further $14.5 million settlement with the two remaining defendants, Japanese manufacturers, in 2002. The total settlement achieved for the class was $96.5 million.

<u>In Re: Disposable Contact Lens Antitrust Litig.</u>, MDL 1030 (M.D. Fla.). Attorneys in the Florida office acted as co-lead counsel and chief trial counsel. Representing both a national class and the State of Florida, the firm helped secure settlements from defendants Bausch & Lomb and the American Optometric Association before trial and from Johnson & Johnson after five weeks of trial. The settlements were valued at more than $92 million and also included significant injunctive relief to make disposable contact lenses available at more discount outlets and at more competitive prices.

<u>In Re: Cardizem CDAntitrust Litig.</u>, 99-01278 (E.D. Mich.) In another case involving generic drug competition, Berman DeValerio, as co-lead counsel, helped secure an $80 million settlement from French-German drug maker Aventis Pharmaceuticals and the Andrx Corporation of Florida. The payment to consumers, state agencies and insurance companies settles claims that the companies conspired to prevent the marketing of a less expensive generic version of the blood pressure medication Cardizem CD. The state attorneys general of New York and Michigan joined that case in support of the class.

<u>In Re: Toys "R" Us Antitrust Litig.</u>, MDL 1211 (E.D.N.Y.). The California office negotiated a $62 million settlement to answer claims that the retailer violated laws by

7

colluding to cut off or limit supplies of popular toys to stores that sold the products at lower prices. One component of the settlement required Toys "R" Us to donate $40 million worth of toys to needy children throughout the United States over a three-year period.

<u>In Re: Canadian Car Antitrust Litig.</u>, 03-md-1532 (D. Mass). In an action against automobile manufacturers and dealer associations, Berman DeValerio reached a partial settlement with defendant Toyota Motor Sales for $35 million and changes to the company's business practices to be in compliance with the Sherman Antitrust Act. The proposed partial settlement requires court approval.

<u>In Re: Industrial Diamonds Antitrust Litig.</u>, MDL-948 (S.D.N.Y.). The California office served as co-lead counsel, alleging General Electric and DeBeers conspired to fix, raise and maintain the prices of industrial diamond products in violation of the federal antitrust laws. The action settled for a combined cash and coupon settlement valued at $26 million.

<u>In Re: NASDAQ Market-Makers Antitrust Litig.</u>, 94cv3996 (S.D.N.Y). The firm played a significant role in one of the largest antitrust settlements on record in a case that involved alleged price-fixing by more than 30 NASDAQ Market-Makers on about 6,000 NASDAQ-listed stocks over a four-year period. The settlement was valued at nearly $1 billion.

<u>In Re: Buspirone Antitrust Litig., MDL 1413 (S.D.N.Y)</u>. Berman DeValerio attorneys also played a key role in obtaining a $535 million agreement from Bristol-Myers Squibb Co. to partially settle claims that the drug company had illegally blocked generic competition for its anxiety medication, BuSpar.

## LEADERSHIP ROLES

The firm has acted as lead or co-lead counsel in dozens of high profile cases, and has played an active role in some of the country's most prominent class actions. The following is a list of active cases where the firm is currently serving as lead or co-lead counsel for the class or as executive committee member. This list does not include the numerous closed actions where the firm served as lead or co-lead counsel.

### <u>Securities Class Actions</u>

- <u>In Re: Abercrombie & Fitch Co. Sec. Litig.</u>, M21-83 (S.D.N.Y) – Member of the Executive Committee.

- <u>In Re: Buca Inc. Sec. Litig.</u>, 05cv1762 (D. Minn.) – Co-lead Counsel.

- <u>In Re: Fannie Mae Sec. Litig.</u>, 1:04cv1639 (D. D.C.) – Co-lead Counsel.

8

- <u>In Re: GenesisIntermedia, Inc. Sec. Litig.</u>, 2:01cv09024 (C.D. Cal) – Co-lead Counsel.

- <u>In Re: ICG Communications Inc. Sec. Litig.</u>, 00cv1864 (D. Colo.) – Co-lead Counsel.

- <u>In Re: KLA-Tencor Corp. Sec. Litig.</u>, 06cv04065 (N.D. Cal.) – Co-lead Counsel.

- <u>In Re: Par Pharmaceutical Sec. Litig.</u>, 06cv03226 (D. N.J.) – Member of the Executive Committee.

- <u>In Re: Philip Services Corp Sec. Litig.</u>, 98cv835 (S.D.N.Y.), 99-7825 (2d Cir.) – Co-lead Counsel.

- <u>In Re Silicon Storage Tech., Inc. Sec. Litig.</u>, C-05-0295 (N.D. Cal.) – Co-lead Counsel.

- <u>In Re: Stone & Webster, Inc. Sec. Litig.</u>, 00cv10874 (D. Mass.) – Member of the Executive Committee and Liaison Counsel.

- <u>In Re: Xcelera.com Sec. Litig.</u>, 1:00cv11649 (D. Mass.) – Co-lead Counsel.

- <u>Carlson v. Xerox Corp.</u>, 3:00cv1621 (D.Conn.) – Co-lead Counsel.

## <u>Antitrust Class Actions</u>

- <u>In Re: Dynamic Random Access Memory (DRAM) Antitrust Litig.</u>, M:02cv01486 (N.D. Cal) – Liaison Counsel.

- <u>In Re: New Motor Vehicles Canadian Export Antitrust Litig.</u>, 03-MD-1532-P-H (D. Me.) – Lead Counsel.

- <u>In Re: Abbott Laboratories Norvir Antitrust Litig.</u>, 04-1511, 04-4203, (N.D. Cal.) – Lead Counsel.

- <u>In Re: Pineapple Antitrust Litig.</u>, 04cv00705 (S.D.N.Y.) – Co-lead Counsel.

- <u>In Re: Reformulated Gasoline (RFG) Antitrust and Patent Litig.</u>, 2:05-ml-01671-CAS-VBK (C.D. Cal.) – Co-lead Counsel.

## TRIAL EXPERIENCE

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

The firm also has extensive experience in taking securities and antitrust class actions to trial. Over the years, its attorneys have gone to trial against pharmaceutical companies in New York and Boston, a railroad conglomerate in Delaware, one of the nation's largest trustee banks in Philadelphia, a major food retailer in St. Louis, and the top officers of a failed New England bank. The firm also took an environmental products company to trial in Philadelphia and successfully argued the case before a federal appeals court.

The firm has been involved in more trials than most of the firms in the plaintiffs' class action bar. Our trial experience includes:

- In Re: Disposable Contact Lens Antitrust Litig., MDL 1030 (M.D. Fla.) Settled for $60 million with defendant Johnson & Johnson after five weeks of trial;
- Hurley v. Federal Deposit Insurance Corp., 88cv940 (D. Mass.) Bench verdict for plaintiffs;
- Levine, et al. v. Fenster, et. al., 2cv895131 (D.N.J.) $3 million plaintiffs' verdict following four-week trial;
- In Re: Equitec Sec. Litig., 90cv2064 (N.D. Cal.) $35 million settlement at close of evidence following five-month trial;
- In Re: ICN/Viratek Sec. Litig., 87cv4296 (S.D.N.Y.) Hung jury with 8-1 vote in favor of plaintiffs; the case settled for over $14.5 million after the trial;
- In Re: Biogen Sec. Litig., 94cv12177 (D. Mass.) Verdict for defendants;
- Peil v. Speiser, 82-1289 (E.D. Pa. 1985) Securities fraud class action; verdict for defendants after six-week trial; Court of Appeals affirms but adopts "fraud-on-the-market" rule for Third Circuit securities cases;
- Kumpis v. Wetterau, 83-0362-(C3) (E.D. MO Dec. 1985) Securities fraud class action; case settled in mid-trial;
- Upp v. Mellon, 91-5219 (E.D. Pa. 1992) Bench trial; court finds for class of trust beneficiaries in suit against trustee bank and orders disgorgement of fees; Third Circuit later reversed based on lack of jurisdiction; and
- White v. Heartland High-Yield Municipal Bond Fund, 00-C-1388 (E. D. Wis.), Jury trial for three weeks; case settled in mid-trial for a PwC settlement of $8.25 million, the court granted final approval of the settlement in June 2006.

10

# PARTNERS

## Boston Office

### Glen DeValerio

Mr. DeValerio was a co-founder in 1982 of Berman DeValerio & Pease, LLP, one of the law firms that formed Berman DeValerio in 2001. He is also the managing partner of the firm's Boston office and oversees some of the firm's most important cases, including pending class actions against Xerox Corp. and Fannie Mae.

Mr. DeValerio is a primary point of contact for many of the firm's public fund clients, including the Massachusetts Pension Reserves Investment Management Board, the Louisiana State Employees' Retirement System, the Oklahoma Firefighters Pension & Retirement System, the Oklahoma Police Pension & Retirement System and the Pennsylvania State Employees' Retirement System.

Mr. DeValerio has prosecuted federal securities law violations, chiefly class and derivative actions, since the early 1970s. A 1969 graduate of the University of Rhode Island, he received his law degree in 1973 from the Catholic University Law School and served on the *Catholic University Law Review's* editorial board for two years. In 1973 and 1974, he worked as a law clerk to the Honorable June L. Green, U.S. District Court for the District of Columbia.

A frequent lecturer on complex securities litigation issues, Mr. DeValerio speaks at continuing legal education seminars sponsored by groups such as PLI, ALI-ABA and the Boston Bar Association. He served as the President of the National Association of Securities and Commercial Law Attorneys (NASCAT) from 1996 through 1998.

Mr. DeValerio has been admitted to practice law in the state of Massachusetts as well as the U.S. Districts Courts for the District of Columbia, Massachusetts, Delaware, New Hampshire and Connecticut. He has also been admitted to practice in the 1st and 4th Courts of Appeals. He is also AV rated by Martindale-Hubbell.

### Norman Berman

Since the creation of the firm in 1982, Norman Berman has focused his activities principally on the complex litigation of cases filed under the federal securities and antitrust laws. Mr. Berman has acted as trial counsel in a number of successful cases, including In Re: ICN Sec. Litig., which was settled after trial for more than $14.5 million in 1996. The trial team's work prompted positive judicial comment.

Mr. Berman graduated from Boston University in 1970 and from Suffolk University Law School in 1974. He was admitted to practice law in Massachusetts and Connecticut in 1974.

### Peter A. Pease

11

Peter A. Pease has been litigating cases under the federal antitrust and securities laws and state unfair trade practices claims for nearly 30 years. He received a B.A. from the University of Denver in 1972 and a J.D. from Suffolk University Law School in 1976. He is admitted to practice in Massachusetts, the U.S. District Courts of Massachusetts and the Eastern District of Michigan, and the U.S. Courts of Appeals for the First and Third Circuits. His effective and successful advocacy has elicited favorable judicial comment in courts throughout the nation.

For over 20 years Mr. Pease has lectured at various bar association CLE programs, trade association annual meetings and the Sloan School of Management at M.I.T., and has written and appeared in the print and broadcast media. He has served as an editor of the American Bar Association's Franchise Law Journal, 1986 - 1989.
Mr. Pease is chair of the Board of Directors of Bay Cove Human Services, Inc., having served as a director since 2000, and formerly a director of the Massachusetts Alliance for the Mentally Ill. He was elected to the Town of Upton Planning Board 1980-86, was elected its chair 1981-1985, and is a deacon of the First Parish Church in Lincoln.

**Jeffrey C. Block**
Jeffrey C. Block graduated *cum laude* from the State University of New York at Albany in 1983 and received his J.D. in 1986 from Brooklyn Law School, where he finished in the top 10 percent of his class.

Prior to joining Berman DeValerio, Mr. Block was associated with the New York law firm of Pomerantz Haudek Block & Grossman, representing shareholders in securities class actions brought under the federal securities laws and in state court actions involving claims of breaches of fiduciary duties by corporate directors.

Mr. Block became associated with Berman DeValerio in 1995 and was named partner in 1997. He continues to focus his practice on complex litigation, including securities and corporate cases. Mr. Block is currently the firm's lead attorney in the Fannie Mae Securities Litigation, a class action alleging that Fannie Mae, its three most senior officers, and outside auditors, had intentionally misapplied accounting rules and engaged in other misconduct to distort financial results and "smooth" earnings growth. The Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio are lead plaintiffs in the case.

Mr. Block is also the lead attorney in the Lernout & Hauspie Products, Bristol-Myers, Symbol Technologies, and Philip Services Corp. securities class actions. In the Lernout & Hauspie Products case, the case team negotiated the third largest settlement ever paid by accounting firms in a securities action - $115 million. The partial settlement has received final court approval. Mr. Block represented the Louisiana State Employees' Retirement System in the Bristol-Myers Securities Litigation in which the firm recovered $300 million on behalf of shareholders. In the Philip Services Corp. case, Mr. Block and the case team negotiated a total $79.5 million settlement, included within that is the largest recovery obtained from a Canadian auditing firm to date. That partial settlement

12

requires preliminary court approval. The case is continuing against the remaining defendants, including Philip Services' top officers and directors.

Mr. Block has been admitted to practice law in the states of New York and Massachusetts as well as the U.S. Districts Courts for the District of Massachusetts, Eastern Tennessee, Northern California, Eastern and Southern New York. He has also been admitted to practice in the 1st and 3rd Courts of Appeals and the U.S. Supreme Court.

## Kathleen M. Donovan-Maher

Kathleen Donovan-Maher became a partner at the firm's Boston office in 1999 and focuses her work in Berman DeValerio's antitrust and securities practices. Ms. Donovan-Maher served as discovery captain in In Re: NASDAQ Antitrust Litigation and was a member of the trial team in In Re: ICN Sec. Litig., which settled for $14.5 million when the jury deadlocked after a 1996 trial. Ms. Donovan-Maher graduated from Suffolk University in 1988, receiving a B.S. degree in Business Administration, *magna cum laude*, and earning an award for maintaining the highest grade point average among students with concentrations in Finance. She graduated from Suffolk University Law School three years later after serving for two years on the *Transnational Law Review*.

Ms. Donovan-Maher was admitted to the Massachusetts Bar in 1991, the United States District Court for the District of Massachusetts in 1992 and the United States Court of Appeals for the First Circuit in 1995. A frequent author on continuing legal education issues, Ms. Donovan-Maher is a member of Phi Delta Phi; Delta Mu Delta National Honor Society in Business Administration; and Omicron Delta Epsilon International Honor Society of Economics.

## Leslie R. Stern

A partner in Boston, Leslie R. Stern heads the new case evaluation and monitoring team for institutional clients. The team investigates potential securities law violations to determine whether a case meets the firm's exacting standards.

In addition to leading the new case development team, Ms. Stern also works on ongoing litigation, including the Carlson v. Xerox Corp securities class action, in which Berman DeValerio is co-lead counsel representing the Louisiana State Employees' Retirement System. Plaintiffs in the case allege that Xerox and several of its top officers of reporting false financial results and failing to adhere to standard accounting practices.

Prior to joining Berman DeValerio in 1998 and being named partner in 2003, Ms. Stern practiced general civil litigation. She earned a B.S. degree in Finance from American University in 1991 and graduated, cum laude, from Suffolk University Law School in 1995. While at Suffolk, Ms. Stern served on the Suffolk University Law Review's editorial board and authored three publications.

Ms. Stern has been admitted to practice law in the Commonwealth of Massachusetts and the U.S. District Courts of Massachusetts and Northern California. She has also been

13

admitted to practice in the 1st and 4th U.S. Courts of Appeals.

**Patrick T. Egan**
Patrick T. Egan received a B.A. in Political Science, *cum laude*, from Providence College in 1993. In 1997, Mr. Egan graduated, *cum laude,* from Suffolk University Law School. Mr. Egan served on the editorial board of the *Suffolk University Law Review* and authored a Note entitled:  "Virtual Community Standards: Should Obscenity Law Recognize the Contemporary Community Standard of Cyberspace," 30 *Suffolk University Law Review* 117 (1996). Mr. Egan was admitted to the Massachusetts Bar in 1997, the Connecticut Bar in 1998 and the New York Bar in 1999.

Mr. Egan came to the firm from the U.S. Department of Labor, where he served as an attorney advisor with the Office of Administrative Law Judges. He became associated with the firm in 1999 and was named partner effective Jan. 1, 2006.

**San Francisco Office**

**Joseph J. Tabacco, Jr.**
The managing partner of the firm's San Francisco office, Joseph J. Tabacco, Jr., has actively litigated antitrust, securities fraud, commercial high tech and intellectual property matters since the 1970s. He is a member of the bar in California, where he began his legal career, and is also a member in good standing of the bars of New York, Massachusetts and the District of Columbia. Since entering private practice in the 1980s, Mr. Tabacco has served as trial or lead counsel in numerous antitrust and securities cases and has been involved in all aspects of state and federal securities and antitrust litigation.

Until 1981, he served as senior trial attorney for the U.S. Department of Justice, Antitrust Division, and in both the Central District of California and the Southern District of New York. In that capacity, he had major responsibility for several criminal and civil matters, including the antitrust trial of the U.S. v. IBM. He is a former teaching fellow of the Attorney General's Advocacy Institute in Washington, D.C., and has served on the faculty of ALI-ABA on programs about U.S.-Canadian business litigation and trial of complex securities cases. Author of numerous articles on securities and antitrust law issues, he is a member of the Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago School of Law.

**Christopher T. Heffelfinger**
Christopher T. Heffelfinger is a 1984 graduate of the University of San Francisco School of Law, where he was a member of the law review. He graduated from Claremont Men's College in 1977 with a B.A. in Economics. He has an AV rating from Martindale-Hubbell. He specializes in corporate, securities, derivative and antitrust litigation, and has acted as a principal attorney in a number of such cases. Prior to joining the firm, he was associated with the San Francisco firm of Gold & Bennett from 1990 to 1994, where he practiced securities and bankruptcy litigation. Before that, he practiced securities litigation and bankruptcy law for five years with a small firm

14

in Marin County with an emphasis on Chapter 11 reorganizations, representing both debtors and creditors. He has litigated securities cases involving real estate limited partnerships, the mortgage banking and insurance industries and companies engaged in the high-tech arena where the allegations involved both non-disclosed product problems and accounting fraud issues.

Mr. Heffelfinger has lectured on discovery as a panelist in the Federal Court Northern District of California Practice Program. In addition, he served as a Captain (infantry) in the U.S. Marine Corps from 1990-1991, when he was recalled to active duty in support of Operations Desert Shield/Storm.

**Nicole Lavallee**

Nicole Lavallee is a 1989 graduate of the French Civil Law School at Université de Montréal in Canada. In 1991, she was admitted to the Quebec Bar (currently inactive) and obtained her Common Law degree from Osgoode Hall Law School in Toronto. Ms. Lavallee joined Berman DeValerio shortly after being admitted to the California Bar in 1993.

Ms. Lavallee focuses her practice primarily on securities and derivative litigation and has been responsible for the prosecution of a number of the firm's high-profile securities fraud cases. Recently, she represented the pension funds of Colorado, Minnesota and Utah in a successful opt-out action against McKesson/HBOC brought in San Francisco Superior Court. Though the details of the settlement are confidential, these clients obtained results that far exceed their pro-rata share of the corresponding class action. Ms. Lavallee was also the partner responsible for the day-to-day prosecution of a derivative insider trading action against Lawrence J. Ellison, the chief executive officer of Oracle Corporation, which resulted in changes to the company's insider trading policies. As part of the 2005 settlement negotiated by plaintiffs' counsel, Mr. Ellison agreed to make $100 million in charitable donations in Oracle's name and pay all attorneys' fees and expenses. At the hearing on summary judgment, the Court praised Ms. Lavallee's work, stating: "Ms. Lavallee, I just wanted to tell you I thought your brief was excellent."

**Todd A. Seaver**

Todd A. Seaver graduated magna cum laude from Boston University in 1994 with a B.A. in International Relations. He earned an M.Sc. from the London School of Economics in 1995 and graduated cum laude from the American University Washington College of Law in 1999. While in law school, Mr. Seaver served as a law clerk at the Federal Trade Commission's Bureau of Competition and as a judicial extern for the Honorable Ricardo M. Urbina of the U.S. District Court for the District of Columbia.

Mr. Seaver was previously associated with the law firm Devine, Millimet & Branch, P.A., where he practiced commercial litigation. He was also an adjunct Professor of Law at the New England School of Law in 2003.

Mr. Seaver became associated with the firm in 2000 and was named partner in 2007. He focuses his work on antitrust litigation and has worked on a number of the firm's high-

15

profile cases including <u>Cardizem CD</u>, a generic drug competition case that settled for $80 million with Aventis Pharmaceuticals and Andrx Corporation.

Mr. Seaver is currently working on several antitrust cases, including <u>Canadian Car</u>, an antitrust action alleging that major auto manufacturers unlawfully conspired to stop the export of cheaper Canadian new vehicles into the United States for use or resale. The case has partially settled with Toyota Motor Sales U.S.A. for $35 million. The settlement requires court approval.

Mr. Seaver was admitted to the New Hampshire Bar in 1999 and the Massachusetts Bar in 2000. He is also a member of the American Bar Association's Antitrust Section.


## <u>West Palm Beach Office</u>

### C. Oliver Burt, III

C. Oliver Burt, a partner in the West Palm Beach office, launched his legal career with a major Philadelphia law firm. In 1971, he began prosecuting white-collar criminal cases as an assistant U.S. attorney for the Eastern District of Pennsylvania and, two years later, was appointed chief of the Civil Division of the United States Attorney's Office. He later returned to private practice in Philadelphia, focusing primarily on antitrust, unfair competition and securities cases. He also briefly served as a special assistant U.S. attorney.

Mr. Burt has extensive litigation experience. He was trial co-counsel for plaintiffs in <u>Peil v. Speiser</u>, and argued the appeal. In its landmark opinion in that case, the Third Circuit adopted the "fraud-on-the-market" presumption of reliance as the law of the Circuit. Mr. Burt also argued numerous appeals in class action cases in the Third, Eighth and Eleventh Circuits and in the Delaware Supreme Court. He is a member of the Florida and Pennsylvania Bars and is admitted to practice before the Supreme Court of the United States. Mr. Burt graduated from Swarthmore College in 1964 and from the Law School of the University of Pennsylvania in 1967.

### Michael J. Pucillo

Michael J. Pucillo is the managing partner of the firm's West Palm Beach office. A member of the Florida Bar since 1978, he is admitted to practice before the United States Court of Appeals for the Fifth and Eleventh Circuits, and the United States District Courts for the Southern and Middle Districts of Florida and the District of Arizona. He has been active in numerous class actions and shareholder derivative actions throughout the United States since 1989. He acted as sole lead counsel in <u>In Re: UCAR International, Inc. Sec. Litig.</u>, 98cv0600-JBA (D. Conn.), an action in which the Florida State Board of Administration was the lead plaintiff. That action settled in 2000 for a $40 million cash payment and the right to appoint a new member to UCAR's Board of Directors, one of the first times such significant corporate governance relief was achieved as part of a securities class action.

16

A graduate of Williams College in 1975 and Georgetown University Law School in 1978, Mr. Pucillo worked as law clerk to two federal judges before serving as an enforcement attorney with the U.S. Securities and Exchange Commission in Washington D.C. Mr. Pucillo has lectured frequently on class actions and litigation. In 1994, he became a member of the faculty of the College of Advanced Judicial Studies ("AJS"), where he taught "Managing the Complex Civil Case" to Florida circuit court judges in 1994 and in 1996. He taught again at the 2002 AJS. A member of the Academy of Florida Trial Lawyers, he has lectured for the Academy on class actions and on recent developments in commercial and business tort litigation. He served as president of the Gold Coast Chapter of the Federal Bar Association during 1989-1990, and served from 1994 to 1997 as chairman of the Palm Beach County Bar Association Federal Court Practice Committee. He also appeared on the PBS Nightly Business Report on issues relating to investor fraud.

**Wendy H. Zoberman**

Wendy Zoberman is admitted to practice before the United States District Court for the Middle and Southern Districts of Florida, as well as all Florida State Courts. Ms. Zoberman is a 1981 graduate of Wellesley College, where she was a Durant Scholar, and was elected to the Phi Beta Kappa Society. She received her law degree from Columbia University in 1984. At Columbia, she served as an Articles Editor of the Columbia University - Volunteer Lawyers for the Arts Journal of Art and the Law and is a co-author of "An Introduction to the New York Artists' Authorship Rights Act," appearing at Vol. 8, No. 3 Columbia - VLA Journal of Art and the Law 369.

Ms. Zoberman has practiced law in Florida since 1984, originally concentrating on First Amendment litigation and commercial litigation. Since 1990, Ms. Zoberman has prosecuted numerous securities class actions and shareholder derivative actions both throughout Florida and in other jurisdictions, including In Re: John Alden Financial Corp. Sec. Litig., Ehrenreich, et al. v. Sensormatic Electronics Corp. and In Re: Brothers Gourmet Coffees, Inc. Sec. Litig.. She was also instrumental in the prosecution of In Re: UCAR International, Inc. Sec. Litig..

**R. Scott Palmer**

R. Scott Palmer received his undergraduate degree from the University of Michigan and his J.D. with honors from the University of Miami Law School in 1976.

From 1976 to 1979, Mr. Palmer served as a misdemeanor and felony trial attorney as well as legal advisor to the Organized Crime Strike Force in the State Attorney's Office in Orlando. In January 1980, Mr. Palmer was appointed Chief Field Counsel for the Florida Department of Law Enforcement and in 1981 became Director of Executive Investigations, responsible for the security of the Governor of the State of Florida, internal affairs at the Department of Law Enforcement and all public corruption investigations. In June 1982, then-Governor Bob Graham appointed Mr. Palmer Chief Prosecutor of the Statewide Grand Jury, a post he held until 1986.

17

After two years in private practice, Mr. Palmer was appointed an Assistant Attorney General for the Antitrust Section of the Economics Crimes Litigation Unit in 1988. He was later promoted to the post of Special Counsel and was responsible for all major litigation in the Economic Crime Section. He joined Berman DeValerio in 1997.

Mr. Palmer has been a member of the Florida Bar since 1976 and is also a member of the bars of the Eleventh Circuit Court of Appeals, Northern, Middle and Southern Districts of Florida. He has authored a law review article on statewide prosecution and a chapter on unfair trade practices in Matthew Bender's "Florida Forms of Jury Instruction." In addition, Mr. Palmer has taught litigation skills at the Florida State University College of Law and has studied antitrust law under Philip Areeda at Harvard Law School.

Mr. Palmer has been nominated to "Who's Who in America" and is listed in the publication "Best Lawyers in America" as well as in "Chambers USA: America's Leading Lawyers for Business." He has also been named one of Florida's "Top Lawyers" by Florida Monthly Magazine and is AV rated by Martindale-Hubbell. Mr. Palmer has been Board Certified as a specialist in Antitrust and Trade Regulation Law by the Florida Bar.

### Manuel J. Dominguez

Manuel Dominguez graduated with honors from the Florida State University Law School in 1995 and was a member of the *Transnational Journal of Law and Policy*. He received his undergraduate degree from Florida International University in 1991. Mr. Dominguez is admitted to practice law in the State of Florida as well as the United States District Courts for the Northern, Middle and Southern Districts of Florida.

Mr. Dominguez served as an assistant attorney general with the State of Florida from 1995 to 1997 in the Department of Economic Crimes. He participated in the prosecution and investigation of corporations and business entities for violations of Florida's RICO statute, Florida's antitrust statute, and Florida's Unfair and Deceptive Trade Practices Act. In private practice from 1997 through 2000, Mr. Dominguez litigated and tried cases involving Florida's Unfair and Deceptive Trade Practices Act, the Florida Consumer Collection Practices Act, Federal Debt Collection Practices Act and Truth in Lending. Mr. Dominguez was named a partner at Berman DeValerio effective Jan. 1, 2006.

ASSOCIATES

**Boston Office**

### John A. Dziamba

John A. Dziamba is a graduate of Southern Connecticut State University and the University of Connecticut School of Law, where he authored: "The Free Press Fair Trial Controversy", 2 *Connecticut Law Review* 351.

18

Mr. Dziamba contributes experience in business, government and large class action litigation. He was lead counsel in successful argument before the U.S. Supreme Court in Vlandis v. Kline, 412 U.S. 443 (1973), which invalidated tuition residency laws in Connecticut and set the standard for in-state tuition residency nationwide. He has also been counsel on a number of class action cases in the areas of investment, consumer and civil rights. He is admitted to practice in Massachusetts and Connecticut.

Mr. Dziamba has been a partner with the Boston firms of Gray & Wendell and Warner & Stackpole. He served as interim general counsel of Teradyne, Inc. and as general counsel of Gammatel, Inc., an international telecommunications company. Mr. Dziamba was Chief Regional Attorney for the Office of Civil Rights of the U.S. Department of Education. He has also served as an arbitrator for the American Arbitration Association and a mediator for the U.S. District Court in Boston.

Mr. Dziamba is an Adjunct Professor at Boston University. He was also an Adjunct Professor at Albertus Magnus College and on the Faculty Trial Practice Seminar of the Connecticut Bar Association, and on the faculty of the national Legal Services Corporation.

Mr. Dziamba joined Berman DeValerio in 2005 and focuses his practice on securities litigation.

**Audley Fuller**

Audley Fuller received his law degree from Boston College Law School in 1985 and a double degree in English and Mass Communications, *cum laude,* from the University of Hartford in 1981. Mr. Fuller was admitted to practice in Massachusetts in 1985, the U.S. District Court for the District of Massachusetts in 1987, and the U.S. Supreme Court in 2000.

Mr. Fuller began his legal career as an assistant district attorney for Middlesex County, Massachusetts. Later, he worked as an associate with Fitzhugh & Associates, a Boston insurance defense firm.

**Allison K. Jones**

Allison K. Jones graduated, *magna cum laude*, from Suffolk University Law School in 2002, where she was executive editor of the Suffolk University Law Review 2001-2002 and a recipient of the Rehnquist Award for Excellence in Professional Responsibility in 2002. Her published articles include *New Property in a New Age of Federalism: the Fight over Intellectual Property Protection* (Suffolk University Law Review, 2002) and *Trade Secret Litigation* (Intellectual Property Conference, 2001). She earned a Master of Arts in History from the University of Florida at Gainesville in 1999 and a Bachelor of Arts from Florida State University in 1988.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

Ms. Jones was admitted to the Massachusetts Bar in 2002 and also is admitted to practice before the U.S. District Court for the District of Massachusetts and the U.S. Court of Appeals for the First Circuit. Prior to becoming an associate at Berman DeValerio, she was a litigation associate at Greenberg Traurig, LLP, in Boston. She focuses her practice on securities litigation.

**Richard F. Malloy, Jr.**

Richard F. Malloy, Jr. graduated from the University of North Texas in 1991 with a B.A. in philosophy and religion studies and a minor in music performance. Mr. Malloy received a J.D. from Suffolk University Law School in 1994, where he received the Award for Outstanding Oral Advocacy in the first-year mock trial competition. While studying at Suffolk Law, Mr. Malloy worked as an advocate at the New England Center for Homeless Veterans and clerked at Adelson Golden & Loria PC, where he assisted in the firm's bankruptcy and real estate practices.

After being admitted to the Massachusetts Bar in 1994, Mr. Malloy worked as a consultant for Tufts and Harvard Universities, where he coordinated the reaccreditations of both universities' medical schools. Mr. Malloy joined Berman DeValerio Pease Tabacco Burt & Pucillo as an associate in 2005.

**Joseph C. Merschman**

Joseph C. Merschman earned a BBA in Accounting in 1998 from the University of Iowa. In 2001, Mr. Merschman graduated from the University of Connecticut School of Law, where he was articles editor for the *Connecticut Law Review*. Mr. Merschman was admitted to the Massachusetts and Connecticut Bars in 2002.

Prior to joining Berman DeValerio in 2003, Mr. Merschman was a law clerk for the Honorable Judge Richard Roberts in the U.S. District Court for the District of Columbia. Mr. Merschman is also a former law clerk of Connecticut Supreme Court Justice Christine Vertefeuille and a summer/fall associate at the law firm of Rogin, Nassau, Caplan, Lassman & Hirtle, LLC.

**Julie A. Richmond**

Julie A. Richmond graduated *magna cum laude* from Tufts University in 1995 with a B.A. in Economics. In 1998, Ms. Richmond received her J.D. from the American University Washington College of Law, *summa cum laude*, where she served as an Articles Editor on the American University Law Review. Ms. Richmond has been a member of the Massachusetts Bar since 1998 and was admitted to practice before the U.S. District Court for the District of Massachusetts in 1999.

Prior to joining Berman DeValerio, Ms. Richmond practiced securities litigation and corporate law at Goodwin Procter LLP. Ms. Richmond became associated with the firm in 2002. She focuses her activities in the firm's securities litigation practice.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

**Abigail R. Romeo**

Abigail R. Romeo received her undergraduate degree in Government from Skidmore College in 2000, graduating *summa cum laude*. In 2003, Ms. Romeo earned a J.D., *magna cum laude*, from Pepperdine University School of Law, where she received the Witkin Award for Academic Excellence in Contracts I, Torts II, and Evidence. Ms. Romeo was also editor of the Pepperdine Law Review. She was admitted to the Massachusetts State Bar in 2003.

Prior to joining Berman DeValerio in 2005, Ms. Romeo worked as a litigation associate with Palmer & Dodge LLP in Boston and as a legal intern with the U.S. Department of Justice, Executive Office for Immigration Review. Ms. Romeo focuses her practice on securities litigation.

**Jonathan Simpson**

Jonathan Simpson graduated *cum laude* from Harvard University in 1999 with an A.B. in Environmental Science and Public Policy. He received his J.D. in 2004 from New York University School of Law, earning honors on the Casebook Division of the Moot Court Board. Prior to attending law school, Mr. Simpson worked as an account coordinator at Candelori Communications and as a research assistant at the Public Policy Institute of California. During the summer of 2003, Mr. Simpson worked as a summer associate for Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo PC, where he was later hired as an associate in the fall of 2004. As an associate, Mr. Simpson practiced in the Intellectual Property litigation section, where he managed discovery for complex patent litigation involving software and computer technology. He also served on the Firm Associate Committee. He was admitted to the Massachusetts Bar in 2004.

Mr. Simpson joined Berman DeValerio as an associate in 2006 and focuses his practice on securities litigation.

**Autumn Smith**

Autumn Smith graduated *cum laude* in 2000 from Wellesley College with a Bachelor of Arts in Political Science and Peace and Justice Studies, earning honors in Political Science and the Eleanor Scheff Kaplan Fund grant for Jewish Studies. She received her J.D. in 2003 from Boston University School of Law. During law school, Ms. Smith served as a research assistant, participated in the Stone Moot Court and the J. Braxton Craven Constitutional Law Moot Court, and volunteered for the Mental Health Legal Advisors Committee. After graduating from law school, Ms. Smith worked as a law clerk for Chief Justice Frank J. Williams, Rhode Island Supreme Court, before joining Rubin and Rudman, LLP as a litigation associate in 2004. There, she worked on a range of complex commercial litigation cases, including securities and environmental matters. Ms. Smith is admitted to the Massachusetts and New York Bars.

Ms. Smith joined Berman DeValerio Pease Tabacco Burt & Pucillo as an associate in 2006 and focuses her practice on securities litigation.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

**Nicole R. Starr**

Nicole R. Starr earned a B.A., *magna cum laude*, in Political Science and a minor in Spanish in 1999 from Providence College. In 2002, Ms. Starr graduated, *summa cum laude*, from Suffolk University Law School, where she served as an Associate Production Editor for the *Suffolk University Law Review* and authored an article entitled: "The Curtailment of the Doctrine of Equivalents: Courts Emphasize the Public Notice Function of Patent Claims," 35 *Suffolk U.L. Rev.* 323 (2001). While at law school, Ms. Starr received the Best Brief and Best Oral Advocate Award in the First Year Legal Practice Skills Program and the Jurisprudence Award for Civil Procedure and Commercial Paper. In 2001, Ms. Starr was a summer associate at the Boston firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., where she researched and prepared memoranda on a variety of legal matters, including litigation, corporate, real estate, and trusts and estates issues. Ms. Starr was admitted to the Massachusetts Bar in 2002.

Ms. Starr joined Berman DeValerio in 2002 and focuses her practice on securities litigation.

**Patrick F. Welch**

Patrick F. Welch earned a Bachelor of Arts in International Relations and Economics in 1999 from Connecticut College and a J.D. in 2005 from New England School of Law, where he was named to the Dean's List for four semesters. Mr. Welch also was awarded the CALI Excellence Award (Corruption in International Business Transactions), a PLI Scholarship for the 36th Annual Institute on Securities Regulations, and an ABA Scholarship for the 18th Annual National Institute on White Collar Crime. In addition, he contributed to the 2005 ALI/ABA Securities Litigation Program and served as Associate Editor for the New England Journal of International and Comparative Law. While in law school, Mr. Welch interned for the United States Attorney's Office, Criminal Division, the United States Securities and Exchange Commission, Division of Enforcement, and for the Honorable Michael C. Lauranzano, Massachusetts District Court Judge. He was admitted to the Massachusetts Bar in 2005 and the Arizona Bar in 2006.

Mr. Welch joined Berman DeValerio in 2005 as a law clerk and became an associate later in the year. He focuses his practice on securities litigation.

**Bryan A. Wood**

Bryan A. Wood graduated, *cum laude*, from the University of Massachusetts in 1991 with a B.A. in Sociology. In 1995, he earned an M.S., *summa cum laude*, in Public Policy from the Eagleton Institute of Politics at Rutgers University and graduated, *cum laude*, from the Temple University School of Law in 1998. While at law school, Mr. Wood was the Managing Editor of the Temple Law Review and a board member of the Temple Law Moot Court Honor Society. Mr. Wood was admitted to the Pennsylvania bar in 1998 and the Massachusetts bar in 2001. In addition, Mr. Wood completed a one-year internship for the Honorable Edward R. Becker, then Chief Judge for the U.S. Court of Appeals for the Third Circuit. He was also admitted to the U.S. District Court for the Districts of Pennsylvania in 1998, Massachusetts in 2001, and Colorado in 2004, as well as the U.S.

Circuit Court of Appeals for the First Circuit in 2003. Mr. Wood is a member of the Boston and American bar associations.

Prior to joining Berman DeValerio in 2003, Mr. Wood was a litigation associate at both Montgomery McCracken Walker & Rhoads in Philadelphia and Schnader Harrison Goldstein & Manello in Boston, where he represented corporations and directors in shareholder and other class action lawsuits, as well as businesses and municipalities in general contract and employment discrimination cases. Mr. Wood focuses his activities in the Firm's securities litigation practice.

## San Francisco Office

### Julie J. Bai

Julie J. Bai earned a B.S. in Economics and a minor in Japanese in 1995 from the University of Pennsylvania, Wharton School of Business. In 2003, Ms. Bai received her J.D. from the University of California, Davis, School of Law. While in law school, Ms. Bai worked on family law matters with low-income victims of domestic violence at the Family Protection Clinic in Woodland, California. Ms. Bai was admitted to the California Bar in 2003. She is a member of the American Bar Association.

Ms. Bai is also a Certified Public Accountant and has worked as a business assurance associate and senior tax accountant at two major public accounting firms. Ms. Bai joined Berman DeValerio as an associate in 2004.

### Lesley Ann Hale

Lesley Ann Hale graduated *cum laude* with a Bachelor of Arts in Government from Harvard College in 1993, where she was named to the Dean's List (1991-1992) and received the Harvard College Scholarship of Academic Achievement and the Elizabeth C. Agassiz Merit Award for Academic Achievement. In 1998, Ms. Hale received her J.D. from Georgetown University Law Center. While studying at Georgetown, Ms. Hale worked as an assistant to a partner at Russell & Russell P.C., drafting pleadings and conducting legal research, and also represented domestic violence victims in the District of Columbia Superior Court. Ms. Hale was admitted to the Massachusetts State Bar in 1998 and the California State Bar in 2005.

Following her admittance to the Massachusetts Bar in 1998, Ms. Hale served as Special Assistant to the United States Attorney, where she conducted misdemeanor bench trials before the District Columbia Superior Court, and as a Trial Attorney in the Criminal Enforcement Section of the U.S. Department of Justice Tax Division. Most recently, Ms. Hale has served as a Senior Motions Attorney for the 9th Circuit U.S. Court of Appeals in San Francisco, where she worked on a class action "discriminatory pay and promotion policy" lawsuit in *Dukes v. Walmart*, and a preliminary injunction appeal challenging the government's "stop-loss" policy, which would facilitate the unwelcome deployment of an

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

Army National Guard soldier, in *John Doe v. Rumsfeld*. She joined Berman DeValerio in 2005.

### Matthew D. Pearson

Matthew D. Pearson is a 1999 graduate of the University of California, Los Angeles, where he earned a B.A. in political science. Mr. Pearson received his J.D. from the University of California, Davis, King Hall School of Law in 2004. While in law school, Mr. Pearson completed the King Hall Public Service Law Program and worked as a legal intern assigned to a felony trial team at the Sacramento County District Attorney's Office.

Mr. Pearson is a member of the California Bar and joined Berman DeValerio as an associate in 2005.

### James C. Magid

James C. Magid earned a Bachelor's degree, with honors, from the University of California at Berkeley in 2000, majoring in Political Economy of Industrial Societies. In 2004, Mr. Magid received his J.D. from the University of California, Hastings College of the Law. While at Hastings, he earned a number of honors, including the William J. Riegger Memorial Student Prize, for outstanding work in international law, and the Class of 1969 Scholarship, for demonstration of leadership in community service. Mr. Magid also participated in the Spring 2003 Jessup International Law Moot Court Competition and was Notes Editor for the *Hastings' Constitution Law Quarterly*, 2003-2004. He was admitted to the California Bar in 2004 and began work as a Staff Attorney for the U.S. Court of Appeals for the Ninth Circuit. He became associated with the California office of Berman DeValerio in 2005.

## Special Counsel

### Kevin Shelley

Kevin Shelley, special counsel to the firm, is a former California Secretary of State and State Assembly leader recognized as an advocate for working people, consumers and investors.

Mr. Shelley's political career began in 1990, when he won a seat on the San Francisco Board of Supervisors. Elected to the California State Assembly in 1996, he championed the rights of workers and fought to protect civil liberties. Among his accomplishments, he improved staff-to-patient ratios at nursing homes, drafted new corporate accountability requirements and created a restitution fund for victims of corporate fraud.

Mr. Shelley, who spent five of his six years in the State Assembly as majority leader, won election for Secretary of State in November 2002. As the state's chief election officer, he is credited with improving voter participation and restoring public confidence.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

Since 2005, Mr. Shelley has been representing consumers and plaintiffs in civil litigation. He began working with Berman DeValerio in 2006. He earned a B.A. in political science from the University of California-Davis and a law degree from the University of California Hastings College of Law in 1983. A member of the California Bar, he is the son of Jack Shelley, a former Mayor of San Francisco, U.S. congressman and California state senator.

## West Palm Beach Office

**Kyle G. DeValerio**
Kyle G. DeValerio graduated from Colby College in 1999 with a Bachelor of Arts in Government. While in college, he spent a year studying European politics and the English legal system at the London School of Economics and Political Science. He received his J.D. in 2004 from the Suffolk University School of Law. During law school, Mr. DeValerio participated in the Irving R. Kaufman Memorial Securities Law Moot Court Competition. Prior to joining the firm as an associate, Mr. DeValerio worked as a legal intern in the Civil Division of the United States Attorney's Office in Boston. Mr. DeValerio is admitted to the Massachusetts and Florida Bars.

Mr. DeValerio joined Berman DeValerio as an associate in 2004 and focuses his practice on securities litigation.

**Jay W. Eng**
Jay W. Eng graduated from Florida State University in 1994 with a B.S. in Economics. In 1998, he graduated from Tulane Law School with a J.D. and certificate of specialization in maritime law. He was awarded the book award for the top grade in Contracts II – the Uniform Commercial Code. He also served as a Notes and Comments Editor to the *Tulane Maritime Law Journal* and authored a note entitled, "The 'Something More' Requirement under Section 5(b) of the Longshore Act: Singleton v. Guangzhou Ocean Shipping Co.," 21 Tul. M. L.J. 205 (1996). Mr. Eng is a member of the Florida Bar, the Southern District of Florida, Middle District of Florida, Northern District of Florida, and the Eleventh Circuit Court of Appeals.

Prior to joining the firm, Mr. Eng was a commercial litigation associate at a major Florida law firm. He also served as a judicial law clerk to Magistrate Judge Ann E. Vitunac, United States District Court for the Southern District of Florida, and as a trial court law clerk to the Fifteenth Judicial Circuit Court in and for the State of Florida.

## Of Counsel

**Anne F. O'Berry**
Anne F. O'Berry, of counsel to the firm, was admitted to the New York bar in 1987 and the Florida Bar in 1995. She obtained her B.A., *summa cum laude,* and Phi Beta Kappa, from the University of Pennsylvania in 1983. She received her J.D. in 1986 from New

25

York University School of Law, where she was an articles editor on the *Annual Survey of American Law* and authored an article entitled, "Prisoners' Rights: Judicial Deference to Prison Administrators," 1985 *Ann. Surv. Am. Law.* 325.

Upon graduating from law school, Ms. O'Berry served as a law clerk for the Honorable Dickinson R. Debevoise, United States District Court for the District of New Jersey. She then served as a research and teaching associate for the Honorable A. Leon Higginbotham, Jr., of the United States Court of Appeals for the Third Circuit, and later co-authored, with Judge Higginbotham, a law review article entitled, "'The Law Only As An Enemy': The Legitimization of Racial Powerlessness Through The Colonial and Antebellum Criminal Laws of Virginia," 70 *N.C. L. Rev.* 969 (1992).

From 1988 to 1991, Ms. O'Berry was as a commercial litigation associate with a major New York law firm. From 1991 to 1996, she was a staff attorney for a federally funded agency in Tallahassee, Florida, where she represented death row inmates in state and federal post-conviction proceedings. From 1996 to 1997, she served as co-director of an agency representing battered women seeking executive clemency. She then taught as an adjunct professor at St. Thomas University Law School in Miami, Florida, and from 1997 until she joined the firm in 2000, she was a central staff attorney at the Fourth District Court of Appeal in West Palm Beach, Florida.

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

## OTHER KEY PERSONNEL

**Christopher A. Szechenyi, Director of Investigations**

Christopher A. Szechenyi is the firm's director of investigations. During the past five years at the firm, Mr. Szechenyi and his team of investigators have worked on many cases that have resulted in significant client recoveries, including suits against Symbol Technologies, Bristol-Myers, and Toyota Motor Sales.

Prior to joining the firm, he worked for 60 Minutes as a Paris-based producer, investigating stories all over the world for correspondent Mike Wallace. He also has conducted investigations for Dateline NBC, A&E, and the Discovery Channel and has contributed stories to *The New Yorker* magazine and *The Boston Globe*. During his 25 years in journalism, he received more than two dozen journalism awards, including two regional Emmys and national recognition from Investigative Reporters and Editors. Among other things, he has exposed a pattern of deadly safety violations on a giant construction project, uncovered design flaws in defibrillators and, after 9/11, interviewed Osama Bin Laden's half-brother. He earned a B.A. in journalism from Lehigh University in 1975. Mr. Szechenyi is an adjunct professor of journalism at Emerson College in Boston.

**Jeannine M. Scarsciotti, Chief Paralegal**

Jeannine M. Scarsciotti is Berman DeValerio's senior paralegal and, as such, coordinates portfolio monitoring and loss calculation for institutional clients. Ms. Scarsciotti joined the firm as a paralegal in 1995. Ms. Scarsciotti attended Bentley College, graduating, *summa cum laude*, in 1995. She earned a B.S. in Professional Studies and an ABA-Accredited Certificate of Paralegal Studies.

**Robert I. Francis, Forensic Accountant**

During the past three years at the firm, Robert I. Francis has worked on many cases that have resulted in significant client recoveries, including suits against McKesson, Reliant Energy, Skillsoft plc, Bristol-Myers, and El Paso.

Prior to joining the firm, Mr. Francis worked as a senior audit manager specializing in financial services at KPMG Peat Marwick and PricewaterhouseCoopers LLP, and served as vice president for Global Accounting Policy/External Reporting for State Street Corporation. Mr. Francis also has experience as an independent consultant, providing accounting support services related to compliance requirements of the Sarbanes-Oxley Act of 2002.

Mr. Francis graduated from Bentley College with a BS in Accountancy and received an MBA from Northeastern University. Mr. Francis is a Certified Public Accountant. He is a member of the American Institute of Certified Public Accountants, the Massachusetts Society of CPAs, and a former member of the East Coast Committee of the National Investment Company Service Association (NICSA).

BOSTON • SAN FRANCISCO • WEST PALM BEACH
TEL: 800 516-9926 • E-MAIL: LAW@BERMANESQ.COM • URL: WWW.BERMANESQ.COM

**Van C. Khang, Forensic Accountant**
During the past two years at the firm, Van C. Khang has worked on many cases that have resulted in significant client recoveries including, suits against Symbol Technologies, ICG Communications, and Lernout & Hauspie.

Prior to her tenure at Berman DeValerio, Ms. Khang worked as a manager in the Global Investigations and Dispute Advisory Services Group for the accounting firm of Ernst & Young and, previously, as a senior consultant and staff auditor.

Ms. Khang graduated from the University of Massachusetts in 1998 with a B.S in Accounting and Finance. In 1993, she earned a B.S. in Molecular Biology from the University of Connecticut. Ms. Khang is a Certified Public Accountant in Massachusetts.

### OFFICES

#### MASSACHUSETTS
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

#### FLORIDA
222 Lakeview Ave., Suite 900
West Palm Beach, FL 33401
Phone: (561) 835-9400
Fax: (561) 835-0322

#### CALIFORNIA
425 California Street, Suite 2100
San Francisco, CA 94104
Phone: (415) 433-3200
Fax: (415) 433-6382

# # #

28